UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
**CASE NO. 1:25-cv-20646**

_____

JORIAN LOFTIN, AS PERSONAL
REPRESENTATIVE OF THE ESTATE
OF PETER T. LOFTIN,

     Plaintiff,

     v.

UNITED STATES OF AMERICA,

     Defendant.

_____

## <u>COMPLAINT</u>

Plaintiff, Jorian Loftin, as Personal Representative of the Estate of Peter T. Loftin, files this suit for refund against the United States of America to recover federal individual income taxes paid with respect to Peter T. Loftin's 1997, 1998, and 1999 tax years and states:

## <u>BACKGROUND</u>

1.     This is an action to recover federal income taxes under 26 U.S.C. § 7422(a) and (f)(1) because this is a lawsuit seeking a refund of income taxes imposed by Title 26 (the "Internal Revenue Code" or "I.R.C.").

2.     Plaintiff seeks the refund and recovery of taxes in the amount of $48,170,026.98 that were overpaid towards Peter T. Loftin's 1997, 1998, and 1999 tax years, plus interest as permitted by law.

3.     Plaintiff has satisfied all conditions precedent because, prior to bringing this suit, Peter T. Loftin's taxes were fully paid, claims for refund were timely filed with the Internal

Revenue Service (IRS), more than six months have passed since those claims were filed, and the IRS has not issued a notice allowing or disallowing any of those claims.

## PARTIES

4.     Peter T. Loftin was a U.S. citizen and resident of Miami, Florida when he passed away November 16, 2019.

5.     On June 21, 2022, the Probate Division of the 11th Circuit Court for Miami-Dade County, Florida appointed Jorian Loftin as the personal representative of the Estate of Peter T. Loftin (the "Estate").

6.     Defendant is the United States of America, the federal government.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to I.R.C. § 7422 because this is a suit for refund and Plaintiff timely filed claims for refund with the IRS as required by I.R.C. § 7422(a) prior to bringing this proceeding. Further, this Court has jurisdiction under 28 U.S.C. §§ 1346(a)(1) and 1491 because this is a suit against the United States for the recovery of an internal revenue tax erroneously or illegally assessed and collected and because this is a suit against the United States founded upon an Act of Congress.

8.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1402(a)(1) because the United States is subject to the Court's jurisdiction with respect to this action, Decedent resided in Miami-Dade County at the time of his death, and the Estate is being administered in Miami-Dade County.

**FACTUAL ALLEGATIONS**
**General Background**

9. Peter T. Loftin ("Decedent") passed away on November 16, 2019.

10. On February 23, 2022, the IRS indicated to Decedent's representatives that Decedent had outstanding liabilities related to tax, penalties, and interest for his 1997, 1998, 1999, 2000, 2012, and 2013 tax years.

11. Pursuant to an inquiry concerning the amount purportedly due from Decedent for these liabilities, in a fax dated February 23, 2022, Katrine Shelton, an attorney with the IRS Office of Chief Counsel, wrote, in relevant part:

> Enclosed is a spreadsheet prepared by RO Steven Lee. It looks like the number is approximately $125M.
>
> I am still working on determining the CSEDs-my apologies, but the transcripts I pulled do not have the current CSEDs [collection statute expiration dates].

12. Ms. Shelton included in her February 23, 2022 fax a spreadsheet prepared by Revenue Officer Steven Lee that showed Decedent owed the following amounts for Form 1040 federal individual income tax liabilities:

| | |
|---|---|
| 1997 | $27,550,732.42 |
| 1998 | $1,007,400.04 |
| 1999 | $84,093,264.11 |
| 2000 | $4,100,131.56 |
| 2012 | $47,905.79 |
| 2013 | $8,126,250.94 |
| Total | $124,925,684.86 |

13.     On March 1, 2022, a payment in the amount of $125,270,000 was made to the IRS for Decedent's 1997, 1998, 1999, 2000, 2012, and 2013 tax liabilities. The payments were applied as follows:

| 1997 | $27,630,097.79 |
|------|----------------|
| 1998 | $ 1,010,302.09 |
| 1999 | $84,320,090.46 |
| 2000 | $ 4,111,942.96 |
| 2012 | $      47,929.42 |
| 2013 | $ 8,149,522.90 |

14.     By March 1, 2022, the collection statute expiration dates for the tax years 1997 and 1998 had expired.

15.     Pursuant to a stipulation dated March 14, 2023 between Plaintiff and the IRS with respect to Decedent's 1999 tax year, and the IRS's subsequent interest computations with respect thereto, the March 1, 2022 payment towards 1999 created an overpayment in the amount of at least $19,529,627,10, which amount, plus interest, has yet to be refunded.

**Background: Probate Case**

16.     On November 26, 2019 a Petition for Administration was filed on behalf of the Estate in the Probate Division of the Circuit Court for Miami-Dade County, Florida.

17.     IRS transcripts for Decedent's 1997 and 1998 tax years reflect a code "520" entered on November 26, 2019 for "Bankruptcy or other legal action filed." A transaction Code "520" indicates the IRS believes there is an event that tolls the collection statute of limitation. Internal Revenue Manual 5.1.19.2.2.

18.     The filing of a probate case tolls the collection statute of limitations under I.R.C. § 6503(b) only when "all or substantially all of the assets of a taxpayer are in the control or custody of the court . . .." Treas. Reg. § 301.6503(b)-1.

19.     Here, neither all nor substantially all Decedent's assets were in the custody or control of the Probate Court. Rather, only a relatively small amount of Decedent's assets was subject to the Probate Court's custody or control pursuant to the November 26, 2019 Petition for Administration.

20.     Thus, the filing of the Petition for Administration on November 26, 2019 did not toll the collection statute of limitations for Decedent's 1997 and 1998 tax years.

21.     This is supported by the fact that, while the Probate case was pending, the IRS continued to try to collect against Decedent's assets that were not part of the Estate.

22.     On January 29, 2020 the IRS issued a Notice of Levy to a third party to try to collect Decedent's liabilities for the 1997 and 1998 tax years.

23.     On October 30, 2020 and October 1, 2021, IRS transcripts reflect that it filed Notices of Federal Tax Liens with respect to Decedent's liabilities for the 1997 and 1998 tax years. IRS transcripts reflect that on December 20, 2020 and October 1, 2021 the IRS filed Notices of Federal Tax Lien with respect to Decedent's 2000, 2012, and 2013 tax years.

24.     If I.R.C. § 6503(b) served to toll the collection statute of limitations ("collection statute expiration date" or "CSED") at all, it was only to suspend the time period to collect against the assets within the custody or control of the Probate Court.

25.     The purpose of I.R.C. § 6503(b) is to suspend the running of the CSED only during the period that IRS collection efforts are hindered. McAuley v. United States, 525 F.2d 1108, 1113 (9th Cir. 1975).

5

26.     The Probate case did not hinder IRS collection efforts. (See also I.R.M. 5.5.4.6(13)), "Probate proceedings do not typically have an automatic stay that prohibits collection or filing of a federal tax lien.")

27.     On May 28, 2020 a Notice to Creditors was sent to the IRS via Fedex Overnight Delivery. The Notice provided that, pursuant to Fla. Stat. 733.702, claims of Decedent's creditors would be barred if not filed within the later of three months from the first publication of the Notice or 30 days from the creditor's receipt of the Notice. The first publication date was February 6, 2020.

28.     On November 3, 2020 the IRS filed a Proof of Claim in the Probate case with respect to Decedent's 1997, 1998, 1999, 2000, 2012, and 2013 individual income tax liabilities. The Proof of Claim was not timely.

29.     I.R.C. § 6502(a) provides, "if a timely proceeding in court for the collection of a tax is commenced, the period during which such tax may be collected by levy shall be extended and shall not expire until the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable."

30.     The IRS's Proof of Claim did not constitute a "proceeding" under I.R.C. § 6502(a).

31.     Accordingly, the CSEDs with respect to Decedent's federal income tax liabilities were not tolled as a result of the IRS filing a Proof of Claim on November 3, 2020.

**Background: 1997 tax year**

32.     Pursuant to a timely-filed request for an extension to file, Decedent timely filed his 1997 Form 1040 Federal Income Tax return. On it, he reported a tax liability of $1,165,001.66. This amount was fully paid as of October 19, 1998.

33.     On May 18, 2000, the IRS opened an examination of Decedent's 1997 Form 1040. Pursuant to that examination the IRS issued a Notice of Deficiency and Tax Court litigation ensued at docket number 21079-06. On November 12, 2010, the United States Tax Court entered a Stipulated Decision in which the parties agreed to a deficiency in the amount of $5,509,573 and an accuracy-related penalty in the amount of $2,203,829.

34.     The IRS assessed the amounts set forth in the Stipulated Decision on November 22, 2010.

35.     Assuming no events occurred that tolled the CSED with respect to the amounts assessed on November 22, 2010, the IRS had 10 years, or until November 21, 2020 to collect the amounts due with respect to Decedent's 1997 tax year. I.R.C. § 6502(a).

36.     There was only one event that tolled the CSED for the 1997 tax year.

37.     On October 11, 2012, Decedent filed a request for a Collection Due Process Hearing. Decedent withdrew the hearing request by August 24, 2013.

38.     The Collection Due Process Hearing thus tolled the CSED for the 1997 tax year, at most, 317 days. I.R.C. § 6330(e).

39.     Accordingly, the CSED for Decedent's 1997 tax year expired on October 5, 2021 (10 years and 317 days from November 22, 2010).

40.     Thus, on March 1, 2022, when the amount of $27,630,097.79 was paid towards 1997, the CSED had already expired.

41.     On February 22, 2024, Petitioner filed a claim for refund with the IRS requesting a refund in the amount of $27,630,097.79, plus interest, with respect to the 1997 tax year. The claim was sent by certified mail. The IRS received the claim on February 28, 2024.

42.     The IRS has not acknowledged, allowed, disallowed, or otherwise responded to the claim for refund for the 1997 tax year.

### Background: 1998 tax year

43.     Pursuant to a timely-filed request for an extension to file, Decedent timely filed his 1998 Form 1040 Federal Income Tax Return by October 15, 1999. On it, he reported a tax liability of $610,045. This amount was paid in full as of September 18, 1998.

44.     On November 10, 1999, the IRS opened an examination of Decedent's 1998 Form 1040. Pursuant to that examination the IRS issued a Notice of Deficiency and Tax Court litigation ensued. On November 12, 2010 the United States Tax Court entered a stipulated decision document in which the parties agreed, with respect to Decedent's 1998 tax year, there was a deficiency in the amount of $282,564 and an accuracy-related penalty in the amount of $111,026.

45.     The IRS assessed the amounts set forth in the stipulated decision document on December 21, 2010.

46.     There was only one event that tolled the CSED for the 1998 tax year.

47.     On October 11, 2012, Decedent filed a request for a Collection Due Process Hearing. Decedent withdrew the hearing request on or before August 24, 2013.

48.     The Collection Due Process Hearing tolled the CSED for the 1998 tax year, at most, 317 days. I.R.C. § 6330(e).

49.     Accordingly, the CSED for Decedent's 1998 tax year expired on November 3, 2021 (10 years and 317 days from December 21, 2010).

50.     Thus, on March 1, 2022, when the amount of $1,010,302.09 was paid towards Decedent's 1998 tax, the CSED had already expired.

51.     On February 22, 2024, a claim for refund was filed with the IRS requesting a refund in the amount of $1,010,302.09, plus interest, with respect to the 1998 tax year. The claim was sent by certified mail. It was received by the IRS on February 28, 2024.

52.     The IRS has not acknowledged, allowed, disallowed, or otherwise responded to the claim for refund for the 1998 tax year.

**Background: 1999 tax year**

53.     Decedent timely filed his 1998 Form 1040 Federal Income Tax return on April 15, 2000. On it, he reported a tax liability of $452,313. This amount was paid in full as of April 11, 2000.

54.     On June 8, 2000, the IRS opened an examination of Decedent's 1999 Form 1040. Pursuant to that examination the IRS issued a Notice of Deficiency and Tax Court litigation ensued. On November 12, 2010, the United States Tax Court entered a stipulated decision document in which the parties agreed to a deficiency in the amount of $232,861 and an accuracy-related penalty in the amount of $93,144. In that decision, the parties stipulated that entry of the decision did not resolve TEFRA partnership adjustments for the 1999 tax year for certain entities in which Decedent had an interest and which were subject to proceedings in a U.S District Court ("TEFRA Case").

55.     On March 1, 2022 the amount of $84,320,090.46 was paid towards Decedent's 1999 tax year.

56.     On March 14, 2023, after the TEFRA Case was resolved, Plaintiff entered into a Stipulation with the Commissioner of the Internal Revenue Service in Tax Court case at Docket No. 4723-16. The parties stipulated that, with respect to Decedent's 1999 tax year:

a. There was a deficiency in the amount of $21,416,894;

b. There was an accuracy-related penalty in the amount of $3,212,534.10;

c. Interest would be assessed as provided by law on the deficiency and penalty;

d.  There was an overpayment in the amount of $62,735,930,46 (together with interest allowable by law);

e. Such overpayment should be credited to the interest payable on the deficiency and penalty and that any remaining overpayment shall be refunded to Plaintiff; and

f. Interest would be credited or paid as provided by law on any overpayment in tax due to Plaintiff.

57. Pursuant to the IRS's own computations, as of November 7, 2022, there was a refund due to Decedent in the amount of $12,6943,351.82 for his 1999 tax year.

58. On February 14, 2024, a claim for refund was filed with the IRS requesting a refund in the amount of $12,694.351.82, plus interest, with respect to the 1999 tax year. The claim was sent by certified mail. It was received by the IRS on February 20, 2024.

59. Pursuant to the IRS's own computations, as of December 9, 2024, the balance due to Plaintiff with respect to Decedent's 1999 tax year was $19,529.627.10.

60. The IRS has not acknowledged, allowed, disallowed, or otherwise responded to the claim for refund for the 1999 tax year.

## COUNT I: REFUND OF 1997 FEDERAL INCOME TAXES

61. Paragraphs 1 through 60 are realleged and incorporated herein.

62. The collection statute of limitations with respect to Decedent's 1997 federal individual income tax liabilities expired by October 5, 2021.

63. Accordingly, the March 1, 2022 payment in the amount of $27,630,097.79 for Decedent's 1997 income taxes was made after the CSED had expired for 1997.

64. Plaintiff is entitled to a refund because the payment of $27,630,097.79 was made after the expiration of the statute of limitations for collection under I.R.C. § 6502.

65. By accepting the payment after the expiration of the CSED, the United States wrongfully, illegally, and erroneously collected the tax.

66. The payment to the IRS for Decedent's 1997 tax year, which payment was made after the expiration of the CSED, constitutes an "overpayment" under I.R.C. § 6401(a). This overpayment shall be refunded to Plaintiff pursuant to I.R.C. § 6402(a).

67. Plaintiff timely filed a claim for refund of the payment.

68. More than six months has passed since that claim was filed.

69. Accordingly, Plaintiff exhausted his administrative remedies prior to filing this suit and Plaintiff is entitled to a refund in the amount of $27,630,097.79, plus interest, with respect to Decedent's 1997 tax year.

### COUNT II: REFUND OF 1998 FEDERAL INCOME TAXES

70. Paragraphs 1 through 69 are realleged and incorporated herein.

71. The collection statute of limitations with respect to Decedent's 1998 federal individual income tax liabilities expired by November 3, 2021.

72. Accordingly, the payment in the amount of $1,010,302.09 applied to Decedent's 1998 income tax was made after the CSED had expired.

73. Plaintiff is entitled to a refund because the payment of $1,010,302.09 was made after the expiration of the statute of limitations for collection under I.R.C. § 6502.

74. The payment to the IRS for Decedent's 1998 tax year, which payment was made after the expiration of the CSED, constitutes an "overpayment" under I.R.C. § 6401(a). This overpayment shall be refunded to Plaintiff pursuant to I.R.C. § 6402(a).

75.     By accepting the payment after the expiration of the CSED, the United States wrongfully, illegally, and erroneously collected the tax.

76.     Plaintiff timely filed a claim for refund of the payment.

77.     More than six months has passed since that claim was filed.

78.     Accordingly, Plaintiff exhausted his administrative remedies prior to filing this suit and Plaintiff is entitled to a refund in the amount of $1,010,302.09, plus interest, with respect to Decedent's 1998 tax year.

### COUNT III: REFUND OF 1999 FEDERAL INCOME TAXES

79.     Paragraphs 1 through 78 are realleged and incorporated herein.

80.     Pursuant to the IRS's own computations, as of November 7, 2022, there was a refund due to Plaintiff in the amount of $12,6943,351.82 for Decedent's 1999 tax year.

81.     Pursuant to the IRS's own computations, as of December 9, 2024, the refund due with respect to Decedent's 1999 tax year had grown to $19,529.627.10.

82.     Plaintiff timely filed a claim for refund.

83.     More than six months has passed since that claim was filed.

84.     Accordingly, Plaintiff exhausted his administrative remedies prior to filing this suit and Plaintiff is entitled to a refund in the amount of $19,529,627.10, plus interest, with respect to Decedent's 1999 tax year.

### PRAYER FOR RELIEF

WHEREFORE Plaintiff, Jorian Loftin, as Personal Representative of the Estate of Peter Loftin, requests this Court:

a.  Enter a judgment in its favor and against the United States of America in the amount of $48,170,026.98, plus interest and costs allowed by law;

12

b.  Award Plaintiff reasonable attorneys' fees and costs; and

c.  Grant such other relief as the Court may deem just.

Dated: February 12, 2025

Respectfully submitted,

Karen J. Lapekas
Florida Bar No. 57527
karen@lapekaslaw.com

LAPEKAS LAW, P.A.
4000 Ponce De Leon Suite 470
Coral Gables, FL 33146
Phone: (305) 600-1485
Fax: (305) 600-1334

13