**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
Case No. 1:25-cv-20646-JB/Torres

|  |  |
|---|---|
| JORIAN LOFTIN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF PETER T. LOFTIN, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| UNITED STATES OF AMERICA, | ) ) |
| Defendant. | ) ) ) |

**PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF**
**SUMMARY JUDGMENT**

Plaintiff Jorian Loftin, as Personal Representative of the Estate of Peter T. Loftin, moves for summary judgment under Fed. R. Civ. P. 56 against the United States with respect to claims for refund for the 1997, 1998, and 1999 tax years. On March 1, 2022 the amounts of $27,630,097.79 and $1,010,302.09 were paid towards Decedent's 1997 and 1998 federal income tax liabilities, respectively. However, by then, the collection statute of limitations had expired. Thus, the United States illegally collected these amounts. This error was a result of an Internal Revenue Service employee retroactively adjusting the collection statute expiration date (CSED) in IRS computer systems to be suspended as of the date Decedent's Probate Case was opened. However, the Probate Case did not toll the CSED. Substantially all Decedent's assets were outside the Probate Court's control, filing a Proof of Claim in a Florida probate court does not constitute a "proceeding for the collection of tax," and the IRS aggressively collected against both Decedent's

probate and non-probate assets while the Probate Case was pending. Accordingly, with respect to the 1997 and 1998 tax years, Plaintiff is entitled to a judgment in the amount of $28,640,399.88, plus interest (both underpayment interest he overpaid on March 1, 2022 and overpayment interest that has accrued since March 1, 2022) and costs allowed by law.

With respect to Decedent's 1999 tax year, Plaintiff is entitled to a judgment in the amount of $24,050,547.71, plus interest and costs allowed by law. On March 1, 2022 the amount of $84,093,264.11 was paid towards Decedent's 1999 federal income tax liability. On March 27, 2023 a Stipulated Decision was entered at Tax Court Docket No. 4723-16 for Decedent's 1999 tax year. It stipulated a deficiency of $21,416,894.00 and a penalty under I.R.C. § 6662(a) of $3,212,534.10. It also stipulated to an overpayment of $62,735,930.46 (with allowable interest), which would be credited to the interest payable on the deficiency and penalty, and that any overpayment would be refunded. As of December 9, 2024, IRS records showed a refund due to Plaintiff for 1999 in the amount of $19,529,627.10. However, this amount overstated accrued underpayment interest. To date, the United States has failed to refund even this amount or provide computations of the amount it believes is due to Plaintiff pursuant to the Tax Court Decision. Plaintiff has determined the amount due, as of April 3, 2026, is $24,050,547.71. He seeks a judgment with respect to the 1999 tax year in this amount, plus additional overpayment interest that is accruing.

Plaintiff also requests this Court order that, in computing interest allowed by law, interest did not accrue on underpayments of Decedent's 1997, 1998, and 1999 taxes between January 20, 2020 and March 1, 2022, pursuant to the presidentially-declared COVID-19 emergency, 26 U.S.C. (I.R.C. § 7508A), *Abdo v. Comm'r*, 162 T.C. 148 (2024)(*en banc*) and *Kwong v. United States*, 179 Fed Cl. 382, 387 (2025).

**TABLE OF CONTENTS**

BACKGROUND AND STATEMENT OF THE CASE……………………………………………….6

I.   The Probate Case did not suspend CSEDs pursuant to I.R.C. § 6503(b) because substantially all Decedent's assets were outside the Probate Court's control……………………………..12

   A.   The Florida Probate Court did not control Loftin Enterprises LLC (a Delaware LLC), The JJJ Loftin Family Trust (a Delaware *inter vivos* trust), JJJ Family LP (a Nevada limited partnership), Clarion Spirits (a Kentucky LLC), or Bardstown, LLC (a Kentucky LLC)………………………………………………………………………...13

   B.   The Florida Probate Court did not control the assets within Loftin Enterprises LLC (a Delaware LLC), The JJJ Loftin Family Trust, (a Delaware *inter vivos* trust), JJJ Family LP (a Nevada limited partnership), Clarion Spirits (a Kentucky LLC), or Bardstown, LLC (a Kentucky LLC)…………………………………………………………..15

   C.   The IRS determined Decedent's gross estate was $65.6 million and that only 2.7% of this amount ($1.72 million) did not pass by operation of law upon or prior to his death……17

   D.   The IRS continued aggressive collection efforts while the Probate Case was pending…20

II.  In Florida, filing a Proof of Claim in a probate case does not toll the CSED pursuant to I.R.C. § 6502(a) because it is not a "proceeding in court for the collection of tax."……………….21

   A.   In Florida, a proof of claim in probate court does not toll the statute of limitations…….24

   B.   In Florida, a proceeding is commenced only when a complaint or petition is filed……..25

   C.   In Florida, the probate law governing proofs of claim is a nonclaim statute…………….25

   D.   In Florida, allowance of a proof of claim in probate court does not amount to a judgment on the claim………………………………………………………………………………27

   E.   Florida law permits the IRS to enforce its liens against a decedent's property, even while a probate case is pending………………………………………………………………...28

III.  Pursuant to a Stipulated Decision entered in Tax Court, Plaintiff is entitled to a refund for 1999 taxes paid, which refund due, as of April 3, 2026, was $24,050,547.71……………...28

IV.  Interest on underpayments did not accrue between January 20, 2020 and March 1, 2022, pursuant to the presidentially-declared COVID-19 emergency and the courts' analyses in *Kwong v. United States*.,,,,,………………………………………………………………..30

CONCLUSION………………………………………………………………………………32

## TABLE OF AUTHORITIES

**Federal Cases**

*Abdo v. Comm'r*, 162 T.C. 148 (2024)……………………………………………………….2, 30-32

*Abromats v. Abromats*, No. 16-CV-60653, 2016 WL 10891528 (S.D. Fla. July 14, 2016)……..14

*Baker v. Baker, Eccles & Co.,* 242 U.S. 394 (1917)……………………………………………….16

*Curtis v. Brunsting*, 704 F.3d 406 (5th Cir. 2013)…………………………………………...14-15

*Est. of Gore v. Comm'r*, T.C. Memo. 2007-169 (2007)…………………………………………17

*Est. of Hirsch v. Comm'r*, 14 T.C. 509 (1950)………………………………………………….18, 19

*Est. of Kurz v. Comm'r*, 68 F.3d 1027 (7th Cir. 1995)…………………………………………...17

*Hanson v. Denckla*, 357 U.S. 235 (1958)……………………………………………………….14-16

*In re Rothstein Rosenfeldt Adler, P.A.*, 2010 WL 2301240 (Bankr. S.D. Fla. June 4, 2010)...14-15

*Kwong v. United States*, 179 Fed Cl. 382 (2025)……………………………………………….2, 30-32

*Lucas v. Acheson*, No. 2:14–CV–0856, 2015 WL 685638 (N.D. Ala. Feb. 18, 2015)…………..14

*Overby v. Gordon*, 177 U.S. 214 (1900)…………………………………………………………16

*Powell v. Comm'r*, 581 F.3d 1267 (10th Cir. 2009)…………………………………………...17

*Riley v. New York Trust Co.*, 315 U.S. 343 (1942)……………………………………………16

*United States v. Chicorel*, 907 F.3d 896, 898 (6th Cir. 2018)……………………………22, 24-25

*United States v. Chrein*, 368 F. Supp. 2d 278 (S.D.N.Y. 2005)………………………………....12

*United States v. Ettelson*, 159 F.2d 193 (7th Cir. 1947)……………………………………….27

*United States v. First Midwest Bank/Illinois, N.A.*, No. 97-C-7365, 1997 WL 675192 (N.D. Ill. Oct. 28, 1997)……………………………………………………………………………..19

*United States v. Guyton*, No. 307-CV-273-J16-MCR, 2009 WL 1308431 (M.D. Fla. May 8, 2009), *aff'd*, 372 F. App'x 5 (11th Cir. 2010)……………………………27

*United States v. Mangiardi*, No. 13–80256–CIV, 2013 WL 3810658 (S.D. Fla. July 22, 2013)………………………………………………………………..15, 18

*United States v. Paisley*, 26 F.Supp.237 (N.D. Ill. 1983)……………………………………..27

*United States v. Saxe*, 261 F.2d 316, 319 (1st Cir. 1958)……………………………………..22-23

*United States v. Silverman*, 621 F.2d 961 (9th Cir. 1980)………………..12-13, 20, 22-24, 26, 28

*United States v. Silverman*, 859 F.2d 1352 (9th Cir. 1988)……………………………………...19

*United States v. Summerlin*, 310 U.S. 414 (1940)……………………………………………….26

*United States v. Wade*, 790 F. App'x 906 (10th Cir. 2019)……………………………………...28

*United States v. Warner*, No. 83 CIV 3717, 1985 WL 2575 (S.D.N.Y. Sept. 18, 1985)………..22


**State Cases**

*Bank Atlantic v. Estate of Glatzer*, 61 So. 3d 1222 (Fla. 3d DCA 2011)………………………..15

*Berger v. O'Hearn*, 41 Cal.2d 729 (1953)………………………………………………………..23

*Blechman v. Est. of Blechman*, 160 So. 3d 152 (Fla. 4th DCA 2015)………………………..13-14

*Dobler v. Arkluk Medical Center Industrial Group, Inc.*, 89 Cal. App. 4th, 530 (Cal. App. 2d Dist. 2004)……………………………………………………………27-28

*Ezeamama v. Estate of Chibugo*, 390 So.3d 189 (Fla. 3d DCA 2024)………………………14, 16

*Friedberg v. Sunbank/ Miami, N.A.*, 648 So.2d 204 (Fla. 3d DCA 1994)……………………….14

*Gettinger v. Gettinger*, 165 So 2d 757 (Fla. 1964)……………………………………………..14-16

*Kent Ins. Co. v. Estate of Atwood*, 481 So.2d 1294 (Fla. 1st DCA 1986)……………………..24

*Legge v. Albert A. Legge Land Co.*, 276 So.2d 208 (Fla. 3d DCA 1973)………………..……..14

*Martin v. Martin*, 687 So.2d 903, 907 (Fla. 3d DCA 1997)……………………………………..14

*May v. Illinois Nat. Ins. Co.*, 771 So.2d 1143 (Fla. 2000)……………………………………………26
*Palma v. S. Fla. Pulmonary & Critical Care, LLC*, 307 So. 3d 860 (Fla. 3d DCA 2020)………16
*Rich v. Narog*, 366 So. 3d 1111 (Fla. 3d DCA 2022)……………………………………………15
*Tsuji v. Fleet*, 36 So.3d 1020 (Fla. 2023)……………………………………………………...26
*United States v. Embrey*, 145 Fla. 277 (1940)……………………………………………...26

**Federal Statutes**

I.R.C. § 6502(a)………………………………………………...,6, 12, 21-23, 26-27
I.R.C. § 6503(b)……………………………………………..6, 12, 19-20
I.R.C. § 6330(e)………………………………………………………………12
I.R.C. § 2036 (a)(1)………………………………………………………17
I.R.C. § 276(c) of the Internal Revenue Code of 1939…………………………………..22
I.R.C. § 6321…………………………………………………………………28
I.R.C § 7508A (2019)………………………………………………...30-32
I.R.C. § 7058(a)……………………………………………………31-32
501(b) of the Stafford Act (42 U.S.C. §§ 5121-5207)…………………………………...31

**Federal Regulations**

26 C.F.R. § 301.6503(b)-1…………………………………………………...12, 20

**State Statutes**

Mich. Comp. Laws § 700.3802(3)…………………………………………………22
Section 714, Cal. Probate Code (1956)……………………………………………..24
Fla. Stat. § 95.031(1)…………………………………………………25
Fla. Stat. § 95.051(1)…………………………………………………24
Fla. Stat. § 731.201(14)………………………………………………13
Fla. Stat. § 733.702………………………………………………24-26, 28
Fla. Stat. § 733.705………………………………………………24, 27
Fla. Stat. § 733.706………………………………………………25, 28
Fla. Stat. § 733.710………………………...…………………………24-26

**Other Authorities**

Florida Probate Rules 5.490 through 5.499…………………………………………...25
Fla. R. Civ. P. 1.050……………………………………………………...…25
Internal Revenue Manual………………………………………..…………6, 20
Section 530 of the California Code of Civil Procedure…………………………………23
Letter to Federal Agencies on an Emergency Determination for the [COVID-19] Pandemic
    Under the [Stafford Act], 2020 Daily Comp. Pres. Doc. 159 (Mar. 13, 2020)………………31
Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related
    Measures, 88 Fed. Reg. 8884 (Feb. 10, 2023)……………………………………………32
https://www.fema.gov/disaster-federal-register-notice/dr-4486-fl-initial-notice........................32

## BACKGROUND AND STATEMENT OF THE CASE

Peter T. Loftin ("Decedent") passed away on November 19, 2019. Stmt ¶ 1.[1] On November 26, 2019 a Petition for Administration was filed in the Probate Division of the Circuit Court for Miami-Dade County, Florida (the "Probate Case"). Stmt ¶ 3. At the time, Decedent had outstanding tax liabilities for the 1997 and 1998 tax years, among others, and a pending Tax Court case for the 1999 tax year. The 1997 and 1998 taxes at issue in this case were assessed on November 22, 2010 and December 21, 2010, respectively. Stmt ¶ 7. When Decedent passed away, the collection statute expiration dates ("CSEDs") under 26 U.S.C (I.R.C.) § 6502 for 1997 and 1998 were set to expire on October 5, 2021 and November 3, 2021. Stmt ¶ 10.

While the Probate Case was pending, the IRS aggressively pursued collection actions. These actions included, among other things, issuing levies — even a levy against probate assets. Despite aggressive collection measures while the Probate Case was pending, on October 27, 2020 an IRS employee input a code "TC 520/80", retroactively, into IRS computer systems to report CSEDs for 1997 and 1998 suspended as of November 26, 2019.[2] The employee input this code retroactively even though the Internal Revenue Manual instructs IRS employees, "Probate proceedings do not typically have an automatic stay that prohibits collection . . .." I.R.M. 5.5.4.6(13).

The United States asserts CSEDs were tolled while Decedent's Probate Case was pending, pursuant to I.R.C. § 6503(b). However, the Probate Case did not suspend the CSEDs because

---

[1] Citations to Plaintiff's Statement of Material Facts are noted as "Stmt ¶ X".

[2] I.R.M. 5.5.4.5(4) states "IRC 6503(b) suspends the period for collection in any judicial proceeding when all or substantially all of the assets of a taxpayer are under the control of a court. If this condition is present, input Transaction Code (TC) 520, Closing code (CC) 80 in the case of probate." There is no evidence in the record indicating the IRS determined, prior to inputting the 520/80 code, that "all or substantially all" of Decedent's assets were under the control of a court.

substantially all Decedent's assets were not subject to the custody and control of the Probate Court. This is a mixed question of fact and law, but there are no material facts with respect to the issue that can be genuinely disputed. It cannot be genuinely disputed because at least 97% of Decedent's assets were indirect interests he held in various entities which the Probate Court did not control. These entities included a Delaware LLC, a Nevada partnership, a Delaware Trust, and two Kentucky LLCs. *By law* the Probate Court could not have controlled those entities or the assets they held. Most important, the Probate Court did not control the Bardstown Distillery, a Kentucky-based distillery that sold for an undisclosed amount[3] in February 2022.  A portion of the proceeds from Bardstown payable to a Nevada partnership ($125,270,000) were advanced by that partnership to cover Decedent's federal tax liabilities on March 1, 2022.

While the personal representatives filed a Motion to Approve the sale of Bardstown, the probate court's approval was not sought because the court controlled Bardstown or because the sale would increase probate assets. Rather, the probate court's approval was sought because the sale would create an encumbrance on probate assets.

The United States also argues the IRS Proof of Claim filed on October 27, 2020 tolled the CSEDs pursuant to I.R.C. § 6502(a). However, in Florida, a Proof of Claim in a probate case does not constitute a "proceeding" to collect tax. Thus, the IRS's Proof of Claim did not toll the CSEDs. This is a question of law.

Because neither the Probate Case nor the IRS's Proof of Claim suspended the CSEDs, the IRS illegally collected payment of Decedent's 1997 and 1998 taxes on March 1, 2022. By then, both CSEDs had expired. Accordingly, Plaintiff is entitled to a refund of amounts paid towards

---

[3] The sale price is subject to a non-disclosure agreement. If the Court believes the total sale price (not only the portion attributable to the Kentucky LLC, Clarion Spirits) is relevant, Plaintiff can provide this information *in camera*.

the 1997 and 1998 taxes on March 1, 2022, the amount of underpayment interest he overpaid, and interest on the overpayment.

Plaintiff is also entitled to a judgment with respect to taxes paid on March 1, 2022 toward Decedent's 1999 tax year, but for a different reason. He is entitled to a judgment with respect to 1999 pursuant to a Tax Court Decision in which the parties agreed there was an overpayment. As of April 3, 2026, a refund is due with respect to the 1999 tax year in the amount of $24,050,547.71. The government agrees a refund is due, but to date, the government has failed to issue a refund for 1999 or even provide Plaintiff accurate computations explaining the amount it believes is due to Plaintiff.

### Decedent's Interests in Trust and Entities

Prior to his death, Decedent owned a 95% interest in Loftin Enterprises, LLC, a Delaware limited liability company.[4] Stmt ¶ 38.  Loftin Enterprises, LLC held a 1% general partnership interest in JJJ Family LP, a Nevada limited partnership. Stmt ¶ 40. At the time of Decedent's death, Loftin Enterprises, LLC's only other asset was a bank account holding approximately $24,403. Stmt ¶ 41.

The other 99% partnership interest in JJJ Family LP was owned by The JJJ Loftin Family Trust. Stmt ¶ 42. The JJJ Loftin Family Trust was a Delaware Incomplete Non-Grantor Trust. Stmt ¶ 43. As of the date of Decedent's passing, The JJJ Loftin Family Trust held a 99% limited partnership interest in JJJ Family LP, among other assets. Stmt ¶ 44.

JJJ Family LP had ownership interests in multiple subsidiary companies. Stmt ¶ 45. One of JJJ Family LP's subsidiaries (of which JJJ Family LP owned 66.8%) was Clarion Spirits, LLC,

---

[4] Pursuant to Maree Loftin's death on 12/19/2018, Decedent received an additional 1.667% interest in Loftin Enterprises, LLC. Stmt ¶ 39.

a Kentucky limited liability company. Stmt ¶ 46. Clarion Spirits owned 100% of The Bardstown

Bourbon Company, LLC, a Kentucky limited liability company ("Bardstown"). Stmt ¶ 47.

At Decedent's date of death, Loftin Enterprises, LLC's 1% interest in JJJ Family LP was

valued at $637,808. Stmt ¶ 47. The amount attributable to Decedent's 96.67% interest in Loftin

Enterprises, LLC was then $616,550. Stmt ¶ 47.[5] Below is a schematic of the ownership interests

in the entities:



Pursuant to an examination of Decedent's 2019 Form 706 Estate Tax Return, the IRS

agreed the total value of Decedent's gross estate was $65,918,916, of which amount the "transfers

during Decedent's life" was $63,918,916. Stmt ¶ 73. The "transfers during life," which appeared

on Schedule G attached to the Form 706, represent the assets indirectly held by the Decedent and

which the Probate Court did *not* control.

---

[5] Pursuant to Maree Loftin's death on 12/19/18, Decedent received an additional 1.667% interest
in Loftin Enterprises, LLC. Stmt ¶ 38.

Pursuant to the 2019 Form 706 examination, the IRS determined Decedent directly held, upon his death, assets in the total amount of $1,722,025. This amount represented only 2.7% of Decedent's gross estate. These are the assets the Probate Court controlled.

In February 2022 Bardstown PPC Buyer, LLC ("Bardstown Buyer") agreed to purchase the Bardstown Distillery from Clarion Spirits, LLC by acquiring 100% of the equity of Clarion Spirits from JJJ Family LP. Stmt ¶ 48. The JJJ Family LP was expected to net proceeds of $169,441,856. Stmt ¶ 49. The amount of the proceeds representing Decedent's 95% interest in Loftin Enterprises, LLC (the 1% partner of the JJJ Family LP), was $1,609,697.63. Stmt ¶ 51.

Neither Bardstown, Clarion Spirits, JJJ Family LP, nor The JJJ Loftin Family Trust were subject to the custody or control of the Probate Court. Landy Decl. ¶ 29. However, on February 24, 2022 the Personal Representatives filed a Joint Motion to Approve [the Bardstown] Sale. Stmt ¶ 52. The Motion to Approve Sale explained that only the "net proceeds attributable to the Estate would be deposited into the estate restricted depository." Ex. R.  Only a small portion of the proceeds (less than 1%) from the Bardstown sale was attributable to the Estate and thus would have been a probate asset. Stmt ¶¶ 50, 53. However, no proceeds from the Bardstown sale reached the probate estate's accounts. Stmt ¶ 54.

The Motion to Approve Sale was filed, in part, because Bardstown Buyer required Decedent's tax liens be paid in full as a condition of its purchase of Bardstown. Stmt ¶ 55.  The IRS liens for Decedent's income taxes had not been satisfied or withdrawn, and the IRS was actively pursuing collection of the liabilities. Stmt ¶ 56, 17, 18, 22, 23, 25, 27-28, 31-35. Bardstown Buyer was not willing to risk that liens might encumber Bardstown's assets. Stmt ¶ 57. Bardstown Buyer thus required JJJ Family LP to advance to the IRS JJJ Family LP's net proceeds from the Bardstown sale to cover Decedent's tax liens. Stmt ¶ 58. Because the Probate Estate did not have

10

the assets to pay Decedent's tax liabilities, when JJJ Family LP advanced its proceeds to the IRS on Decedent's behalf, it would create an encumbrance on the Probate Estate. Stmt ¶ 59. The Letters of Administration required a court order prior to encumbering the Estate. Stmt ¶ 60. Pursuant to the Motion to Approve Sale, the Personal Representative obtained the Probate Court's approval to encumber the Estate and issue a Promissory Note to JJJ Family LP. Stmt ¶ 61. Plaintiff signed a $125,270,000 Promissory Note as Personal Representative of the Estate. Stmt ¶ 62. It provided

> This Note evidences that certain payment made by or through Bardstown PPC Buyer LLC with the assets of JJJ Family, LP on or about February 28, 2022 to the Internal Revenue Service, deposited with a Form 14135, in satisfaction of the income tax liens of Peter T. Loftin, deceased. Ex. T (emphasis added).

None of the Personal Representatives executed the sale documents in their capacity as representatives of the Estate. Stmt ¶ 63. That is because the Estate was not a party to Bardstown Buyer's purchase agreement. Stmt ¶ 63. That is because neither Clarion Spirits nor Bardstown were probate assets subject to the Probate Court's control. Landy Decl. ¶ 29.

In advance of the Bardstown sale, and in response to an inquiry concerning the amount due for Decedent's tax liabilities, on February 23, 2022 an IRS attorney sent a fax stating:

> Enclosed is a spreadsheet prepared by RO Steven Lee. It looks like the number is approximately $125M.

> I am still working on determining the CSEDs-my apologies, but the transcripts I pulled do not have the current CSEDs. Stmt ¶ 76, Ex V. pp. 12-17.

Pursuant to the IRS's attorney's fax, on March 1, 2022 Bardstown Buyer remitted a wire to the IRS in the amount of $125,270,000. Stmt ¶ 65.  The amounts of $27,630,097.79, $1,010,302.09, and $84,320,090.46 were designated to Decedent's 1997, 1998, and 1999 liabilities, respectively. Stmt ¶ 66. In connection with the wire, Bardstown Buyer sent a Form 14135 Application for Certificate of Discharge of Property from Federal Tax Lien. Stmt ¶ 67. In the cover letter to the application, Bardstown Buyer wrote,

11

> Bardstown has purchased membership interests in Clarion Spirits, LLC. Out of an abundance of caution and although the amounts above are currently in dispute by the Estate of Peter T. Loftin, Bardstown is transmitting the Deposit in an effort to ensure that the tax liabilities reflected on any NFTL . . . are fully on deposit with the IRS. These amounts are intended to serve as a deposit with respect to any potential assertion of liability against Bardstown, as purchaser or transferee of any interest in Clarion Spirits, LLC . . .. Ex. V, p.4.

On February 22, 2024 Plaintiff filed claims for refunds for the amounts applied to Decedent's 1997 and 1998 liabilities. Stmt ¶ 89.  On February 14, 2024, Plaintiff filed a claim for refund with respect to the 1999 tax year.

**I.      The Probate Case did not suspend CSEDs pursuant to I.R.C. § 6503(b) because substantially all Decedent's assets were outside the Probate Court's control.**

Generally, the IRS has ten years after taxes are assessed to collect them. I.R.C. § 6502. This 10-year collection statute of limitations (CSED) is tolled for various reasons. One reason is while a Collection Due Process (CDP) Hearing is pending. I.R.C. § 6330(e). Pursuant to a CDP Hearing that was open 317 days, CSEDs for Decedent's 1997 and 1998 tax years were extended until October 5, 2021 and November 22, 2021, respectively. Stmt ¶¶ 9, 10.

The CSED is also suspended when "the assets of the taxpayer are in the control or custody of the court in any proceeding." I.R.C. § 6503(b). A Treasury Regulation clarifies this suspension applies only when all or substantially all the assets of a taxpayer are in the control or custody of the court. 26 C.F.R. § 301.6503(b)-1; see also *United States v. Chrein*, 368 F. Supp. 2d 278, 281 (S.D.N.Y. 2005), aff'd, 274 F. App'x 56 (2d Cir. 2008) ("The regulations makes clear that § 6503(b) applies when 'all or substantially all of the assets of a taxpayer are in the control or custody of the court in any proceeding before any court.'").

In *United States v. Silverman*, 621 F.2d 961, 963 (9th Cir. 1980) ("*Silverman I*"), the Ninth Circuit considered whether CSEDs were tolled under Section 6503(b) during a probate case. It wrote, "The Internal Revenue Code provisions dealing with the limitations provisions applicable

to collection of taxes do not distinguish in a relevant manner between bringing suit and levying on property. Both must be available before it can be said that collection procedures are unhindered." *Id*. at 966-967. Thus, for the CSED to be tolled, both the ability to bring a suit and the ability to levy on property must be available. *Id*. This suspension, however, "should not exist when the bar to levy is insubstantial." *Id*. at 967.

Here, upon Decedent's death, the Probate Court controlled less than 3% of Decedent's assets, in other words, an insubstantial amount. That is because 97.3% of Decedent's assets were held indirectly through The JJJ Loftin Family Trust and the subsidiary of JJJ Family LP in which The JJJ Loftin Family Trust was a 99% partner. An *inter vivos* trust like JJJ Loftin Family Trust is not subject to a probate court's administration. The law is well settled that a probate court does not control entities or assets held by entities. Here, the Probate Court did not have control over—*and could not have had control over* —Loftin Enterprises LLC or JJJ Family LP. It also did not have control over—*and could not have had control over*—The JJJ Loftin Family Trust or the entities The JJJ Loftin Family Trust held, including, indirectly through Clarion Spirits, Bardstown LLC and its asset, the Bardstown Distillery.

A. **The Florida Probate Court did not control Loftin Enterprises LLC (a Delaware LLC), The JJJ Loftin Family Trust (a Delaware *inter vivos* trust), JJJ Family LP (a Nevada limited partnership), Clarion Spirits (a Kentucky LLC), or Bardstown, LLC (a Kentucky LLC).**

A probate court controls only probate assets, which assets comprise the "probate estate." The probate estate encompasses a decedent's property "that is the subject of administration." Fla. Stat. § 731.201(14).  Probate assets are those owned solely by the decedent at death and which do not pass by operation of law or by contract to another party. It is these assets, and these assets only, that are subject to the administration of the probate court. *Blechman v. Est. of Blechman*, 160 So. 3d 152, 157 (Fla. 4th DCA 2015) ("If the subject property will pass either intestate or by way of a

13

will, then it is part of the decedent's probate estate."). The law is clear that Florida probate courts do not control entities in which a decedent held an interest (even a 100% interest) or the assets within them. *Ezeamama v. Estate of Chibugo*, 390 So.3d 189 (Fla. 3d DCA 2024); *Gettinger v. Gettinger*, 165 So 2d 757 (Fla. 1964). The argument that the Probate Court controlled any of the entities here is even more tenuous because none were Florida entities.

Florida probate courts do not control entities and property situated outside of Florida. *Hanson v. Denckla*, 357 U.S. 235, 249 (1958). All the entities in which Decedent held a direct or indirect interest were non-Florida entities. Thus, Loftin Enterprises (a Delaware LLC) was not a probate asset. The JJJ Loftin Family Trust (a Delaware trust) was not a probate asset. JJJ Family LP (a Nevada limited partnership) was not a probate asset. Clarion Spirits (a Kentucky LLC) was not a probate asset. Bardstown (a Kentucky LLC) was not a probate asset. None of the assets held by these entities were probate assets. Finally, Bardstown Distillery was not a probate asset.

The JJJ Loftin Family Trust was an *inter vivos* trust because assets were transferred to it years before Decedent's death. See *Curtis v. Brunsting*, 704 F.3d 406, 410 (5th Cir. 2013). This Court has agreed, in Florida, "an *inter vivos* trust is not part of the settler's estate and is not subject to the probate administration." *Abromats v. Abromats*, No. 16-CV-60653, 2016 WL 10891528, at *3 (S.D. Fla. July 14, 2016) citing *Martin v. Martin*, 687 So.2d 903, 907 (Fla. 3d DCA 1997) (citing *Friedberg v. Sunbank/ Miami, N.A.*, 648 So.2d 204 (Fla. 3d DCA 1994)); *Legge v. Albert A. Legge Land Co.*, 276 So.2d 208, 209 (Fla. 3d DCA 1973); and *In re Rothstein Rosenfeldt Adler, P.A.*, 2010 WL 2301240, at *4 (Bankr. S.D. Fla. June 4, 2010). Assets within an *inter vivos* trust avoid probate because "such assets are owned by the trust, not the decedent, and therefore are not part of the decedent's estate." *Lucas v. Acheson*, No. 2:14–CV–0856, 2015 WL 685638, at *5 (N.D. Ala. Feb. 18, 2015) quoting *Curtis v. Brunsting*, 704 F.3d 406, 409-10 (5th Cir. 2013). In

14

*United States v. Mangiardi*, this Court considered a case where the decedent's assets were held, in part, within an *inter vivos* trust. No. 13–80256–CIV, 2013 WL 3810658 (S.D. Fla. July 22, 2013). There, it was not disputed that assets in the trust were not subject to probate. Likewise, here, a Delaware trust, several non-Florida entities, and the property they held, were not subject to the Probate Court's control.

> **B. The Florida Probate Court did not control the assets within Loftin Enterprises LLC (a Delaware LLC), The JJJ Loftin Family Trust, (a Delaware *inter vivos* trust), JJJ Family LP (a Nevada limited partnership), Clarion Spirits (a Kentucky LLC), or Bardstown, LLC (a Kentucky LLC).**

Decedent's probate estate was administered under Florida law.  Upon the death of a decedent who owns 100% of an entity, "the stock of the [entity] is an asset of the Estate, but the funds of the [entity] are a step removed from the Estate." *Bank Atlantic v. Estate of Glatzer*, 61 So. 3d 1222, 1223 (Fla. 3d DCA 2011). Further, "the affairs of a corporation, even though substantially owned by a decedent, cannot be administered by decedent's executor as assets of the decedent's estate." *Rich v. Narog*, 366 So. 3d 1111, 1117 (Fla. 3d DCA 2022) citing *Gettinger v. Gettinger*, 165 So. 2d 757, 757 (Fla. 1964).  Thus, the probate court did not have the authority or ability to access the property held by entities in which Decedent held an interest, or to administer those entities as assets of the estate. The only stock which was a probate asset was the stock Decedent held in Loftin Enterprises LLC. Upon his death the value of this stock was $616,550. Stmt ¶ 47.

The United States Supreme Court held a Florida probate court did not have jurisdiction over a Delaware trust. *Hanson v. Denckla*, 357 U.S. 235, 249 (1958). The Supreme Court held the Florida court did not have jurisdiction over either the trustee or the trust assets. The Florida court held that its authority over the decedent's probate and will, under which assets might pass, was sufficient to confer jurisdiction. *Id*. at 247-248. The Supreme Court disagreed and stated, "For the

purpose of jurisdiction *in rem* the maxim that personalty has its situs as the domicile of its owner is a fiction of limited utility." *Id*. at 249. More, "The maxim is no less suspect when the domicile is that of a decedent." *Id*. There was no evidence the assets within the Delaware trust were located in Florida and there was nothing "sufficient to establish a situs in Florida." *Id*. at 247. Further, "In analogous cases, this Court has rejected the suggestion that the probate decree of the State where decedent was domiciled has an *in rem* effect on personalty outside the forum State" *Id*. at 249 citing *Riley v. New York Trust Co.*, 315 U.S. 343, 353 (1942); *Baker v. Baker, Eccles & Co.,* 242 U.S. 394, 401 (1917); and *Overby v. Gordon*, 177 U.S. 214 (1900).

Even where a decedent was the sole member of a Florida LLC, a Florida Court of Appeal held that real property held by the LLC was not an estate asset. *Ezeamama v. Estate of Chibugo*, 390 So.3d 189, 192 (Fla. 3d DCA 2024). The court applied the principle set out by the Florida Supreme Court in *Gettinger v. Gettinger. Id*. at 191. In *Gettinger* the Florida Supreme Court held "the affairs of a corporation, even though substantially owned by a decedent, cannot be administered by decedent's executor as assets of the decedent's estate." *Ezeamama* at 191 citing *Gettinger v. Gettinger*, 165 So.2d 757, 757 (Fla. 1964). The *Ezeamama* court recognized "an LLC is an entity separate from its members, just as a corporation is separate from its shareholders." *Id*. at FN 4 citing *Palma v. S. Fla. Pulmonary & Critical Care, LLC*, 307 So. 3d 860, 866 (Fla. 3d DCA 2020). This separate legal status means that an entity's assets remain outside a probate court's control and are not subject to estate administration procedures, even when the decedent owned 100% of the entity.

16

**C. The IRS determined Decedent's gross estate was $65.6 million and that only 2.7% of this amount ($1.72 million) did not pass by operation of law upon or prior to his death.**

Decedent's gross estate, upon his passing, was valued at $65,642,741. Stmt ¶ 73. A gross (taxable) estate includes "all assets that the decedent possessed or effectively controlled." *Est. of Kurz v. Comm'r*, 68 F.3d 1027, 1029 (7th Cir. 1995). The gross estate includes the value of property interests transferred by the decedent during his or her lifetime if the decedent retained for life the possession or enjoyment of, or the right to the income from, the transferred property. *Est. of Gore v. Comm'r*, T.C. Memo. 2007-169 at 22, (2007) (citing I.R.C. § 2036 (a)(1)), *supplemented*, T.C. Memo. 2007-270 (2007), aff'd sub nom. *Powell v. Comm'r*, 581 F.3d 1267 (10th Cir. 2009).

The IRS determined the value of Decedent's gross estate in its examination of Decedent's 2019 Form 706 U.S. Estate Tax Return. Stmt ¶ 75. The Form 706 reported a gross estate of $65.5 million. Stmt ¶ 69. Of this amount, $63.9 million was attributed to "Schedule G: Transfers During Decedent's Lifetime." Stmt ¶ 70. Of this $63.9 million, $57.6 million was attributed to The JJJ Loftin Family Trust's interest in JJJ Family LP. Stmt ¶ 71. JJJ Family LP held a 66.8% interest in Clarion Spirits, which entity owned Bardstown. Stmt ¶¶ 45,46. Decedent's remaining property, reported as having a fair market value of $1.62 million, appeared on Schedules B, C, and F. Pursuant to its examination, the IRS determined Schedule G should have reported a total valuation of $65.6 and Schedules B, C, and F, should have reported $1.72 million. Stmt ¶¶ 73, 74. Thus, according to the IRS's own determination, only $1.72 million did not pass by operation of law on or before Decedent's passing and only this amount, 2.7% of the gross estate ($1.72 million), could have been subject to the Probate Court's control.

17

This Court has explained that, while "the majority of decedent's assets were included in the Estate for federal estate tax purposes," those assets were "not subject to probate." *United States v. Mangiardi,* No. 13-80256-CIV, 2013 WL 3810658, at *1 (S.D. Fla. July 22, 2013). In *Mangiardi*, the decedent's Form 706 reported a gross estate of $8 million which included assets within an *inter vivos* trust and an Individual Retirement Account. *Id.* While *Mangiardi* did not turn on whether the assets within the trust or IRA were "substantial" in relation to the property within the probate court's control, it showed the government was permitted to pursue collections against a transferee of non-probate assets. Those assets were included within the gross estate reported on the decedent's Form 706 but were not probate assets. That is the case here; 97.3% of Decedent's gross estate were not probate assets.

A transfer during the decedent's life reported on Form 706 Schedule G is included in the gross estate for federal estate tax purposes but is generally not subject to the custody and control of the probate court. Most such assets are non-probate assets, and their administration is governed by the terms of the trust or other transfer instrument, not by the probate court. In *Estate of Hirsch v. Comm'r* the Tax Court wrote, "It is clear that jointly held assets which passed to decedent's wife on his death were includible in the gross estate of the decedent for Federal tax purposes, regardless of the fact that under New York probate law such assets did not constitute assets of the decedent's estate for local probate purposes." 14 T.C. 509, 515-516 (1950). The Tax Court explained that such assets were nonetheless subject to claims of creditors. *Id*. at 516. Further, "the fact that such jointly held property passed directly from the decedent to his surviving spouse rather than passing through the decedent's estate for administration does not, in itself, relieve such assets from being subject to the claims of creditors where, as here, the decedent until the time of his death

18

possessed assets which were subject to and more than ample to satisfy the claims of his creditors."
*Id*.

Courts consider a decedent's gross estate compared to his probate estate when considering whether substantially all a decedent's assets were subject to a probate court's control. After *Silverman I*, the Ninth Circuit considered a second appeal at *United States v. Silverman*, 859 F.2d 1352 (9th Cir. 1988) ("*Silverman II*").  *Silverman I* recognized that a CSED should not be suspended "if there were substantial assets against which the government could have levied during the period of limitations." *Id*. at 1353. *Silverman II* resolved the question of whether substantially all assets were under the probate court's control. *Id*. at 1353-54. The court agreed $32,250 (7%) was "insubstantial" compared to the total value of the decedent's estate ($450,000). *Id*. at 1353. However, one-half of the cash and securities in the estate account was the decedent's wife's share and those assets were not subject to levy.  *Id*. at 1353. Thus, "Mrs. Silverman's share was not part of the taxable estate, it was not liable for any portion of the estate tax, and it could not be levied against to satisfy the estate tax assessment." *Id*. Accordingly, the *Silverman II* court agreed substantially all decedent's assets were subject to the probate court's control. *Id.* at 1354.

The Northern District of Illinois Court also considered the value of the gross estate when determining whether substantially all a decedent's assets were subject to a probate court's control. *United States v. First Midwest Bank/Illinois, N.A.*, No. 97-C-7365, 1997 WL 675192, at *12 (N.D. Ill. Oct. 28, 1997). In a footnote, the court analyzed the gross estate's valuation and wrote, "If 50% of the value of the jointly owned property was excluded from the taxable estate and, thus, not considered under the § 6503(b) analysis, the proportion of outstanding assets to the total estate would be approximately 10.6%." *Id*. at *21.

19

Here, all Decedent's gross estate was attributable to Decedent. The IRS's determinations in its audit of Decedent's Form 706 resolved any question of what was "probate property." See Exs. X, Y, Z. Probate property was anything that had not passed prior to or upon Decedent's death; in other words, any property on schedule B, C, and F attached to the Form 706. That property, the IRS determined, was worth only $1.72 million upon Decedent's death, which was less than 3% of his ($65.5 million) gross estate. This was insubstantial.

### D. The IRS continued aggressive collection efforts while the Probate Case was pending.

There is no evidence the pending Probate Case caused the IRS to restrict its collection efforts. In fact, IRS employees were not even aware of the Probate Case until more than 9 months after it was open. Stmt ¶ 16. When the IRS did finally note the pending Probate Case, the only thing it changed was the CSED. Stmt ¶ 12. It continued to pursue aggressive collection actions. Stmt ¶¶ 14-18, 22-23, 25, 27-35.

While the Probate Case was open, IRS employees pursued collection against both Decedent's probate and non-probate assets.  The IRS instructs, in its own Internal Revenue Manual, that if an "estate's assets are not under the control of the court and the case is assigned to the field, the revenue officer can continue collection efforts." I.R.M. 5.5.4.4(3). This instruction is consistent with Treas. Reg. § 301.6503(b)-1 that provides the CSED is suspended under I.R.C. § 6503(b) only when substantially all a decedent's assets are within the control of a probate court. This is because a "suspension should not exist when the bar to levy is insubstantial." *United States v. Silverman*, 621 F.2d 961, 967 (9th Cir. 1980). Here, the IRS's collection efforts during Decedent's Probate Case show the Probate Case was not even an insubstantial obstacle to the IRS. It was no obstacle as all. We know this because, while the Probate Case was open, the IRS:

20

1.  Issued levies against both probate and non-probate assets; Stmt ¶¶ 18, 19, 20, 21, 22.

2.  Drafted collection plans of action; Stmt ¶ 17.

3.  Issued a summons and levy to the trustee of The JJJ Loftin Family Trust; Stmt ¶¶ 21-22.

4.  Issued a summons for JJJ Family LP; Stmt ¶¶ 23-24.

5.  Issued a summons for subsidiaries of JJJ Family LP; Stmt ¶¶ 23-26.

6.  Filed liens in 8 counties and across 3 states; Stmt ¶ 27.

7.  Filed a nominee lien; Stmt ¶ 28.

8.  Interviewed third parties; Stmt ¶ 34.

9.  Conducted in-person inspections of Decedent's real and personal property; Stmt ¶¶ 15, 31.

10. Demanded payment and financial information; Stmt ¶ 32.

11. Pulled credit reports; Stmt ¶ 33.

12. Searched public records for collection sources; Stmt ¶ 33. and

13. Issued ainal Notice of Intent to Levy, Notice of Intent to Contact Third Parties, Notice of Intent to Seize Property, and Warnings of Enforcement. Stmt ¶ 35.

The United States will argue the Probate Case hindered its collection efforts (and thus the CSED should be tolled). These undisputable facts prove otherwise.

II.     **In Florida, filing a Proof of Claim in a probate case does not toll the CSED pursuant to I.R.C. § 6502(a) because it is not a "proceeding in court for the collection of tax."**

The CSED is also tolled "If a timely proceeding in court for the collection of tax is commenced." I.R.C. § 6502(a) (flush language). The United States asserts the IRS's Proof of Claim was a proceeding for the collection of tax that tolled the CSED under I.R.C. § 6502(a). However, in Florida, it does not. In Florida, filing a proof of claim in a probate case merely puts the personal representative of the estate on notice. The proof of claim only preserves the creditor's right to participate in probate assets. It does not otherwise toll the collection statute of limitations.

21

The question of whether a proof of claim is a "proceeding in court" is a question of federal law; however, the answer "turns on the nature, function, and effect of the proof of claim under state law." *United States v. Chicorel*, 907 F.3d 896, 898 (6th Cir. 2018) citing *United States v. Silverman*, 621 F.2d 961, 964 (9th Cir. 1980) and *United States v. Saxe*, 261 F.2d 316, 319 (1st Cir. 1958). Courts look to "how a state treats the filing of a proof of claim to determine whether it qualifies as a proceeding in court under § 6502(a)." *Chicorel* at 897. Courts consider factors which include whether the proof of claim (1) "serves merely to provide notice to the estate"; (2) "works to toll state statutes of limitations"; and (3) "will necessarily lead to a final disposition of the claim." *Id*.

In *Chicorel*, the Sixth Circuit held the IRS's proof of claim filed in a Michigan probate case tolled the CSED under I.R.C. § 6502(a). *Id*. at 899. However, Michigan law provides, "for purposes of a statute of limitations, the proper presentation of a claim . . . is equivalent to commencement of a proceeding on a claim." *Id*. at 898 citing Mich. Comp. Laws § 700.3802(3). Michigan law not only tolls state statute of limitations, "it specifically equates presentation of the claim with a proceeding." *Id*. Further, in Michigan, "a properly presented proof of claim necessarily required action on the part of the estate." *Id*. The court did not consider whether an untimely claim was a "proceeding" because the IRS timely filed its claim. *Id*. at 898-899.

In *United States v. Saxe*, 261 F.2d 316, 317 (4th Cir. 1958) the court also considered whether filing a proof of claim in a probate court was "a proceeding in court" within the meaning of I.R.C. § 276(c) of the Internal Revenue Code of 1939 (the precursor to I.R.C. § 6502).[6] It analyzed Massachusetts law and held the creditor's claim in probate court did not toll the CSED.

---

[6] *United States v. Warner*, No. 83 CIV 3717, 1985 WL 2575, at *3 (S.D.N.Y. Sept. 18, 1985).

22

*Id*. at 319. There, the only purpose of a creditor's filing in probate court was to extend the time for service, which "can hardly be characterized as a proceeding in court." *Id.* at 320. The court agreed the filing was "notice and nothing further," which notice did not "rise to the dignity of a proceeding." *Id*.

In *Silverman I,* 621 F.2d 961, the Ninth Circuit addressed the same question. The IRS filed proofs of claim in a probate case. When the claim was not approved, the United States filed a suit to reduce the tax to judgment. *Id*. at 964. The United States argued its proofs of claim began "a proceeding in court" and thus the CSED was tolled under I.R.C. § 6502(a). Consistent with the First Circuit in *Saxe* the Ninth Circuit agreed that "what constitutes a proceeding in court presents a question of federal law and the proper answer turns on the nature, function and effect of filing a claim under the relevant local law." *Id*. The Ninth Circuit relied on a decision of the California Supreme Court in *Berger v. O'Hearn*, 41 Cal.2d 729 (1953). In *Berger*, the court held that, even when both a proof of claim and objection thereto were timely, the claim did not suspend the applicable statute of limitations. The *Berger* court referred to section 530 of the California Code of Civil Procedure which stated, "an action is commenced . . . when the complaint is filed." *Berger* at 734. Accordingly, the court rejected the contention that "filing of a claim with the probate court itself amounted to the commencement of an action within the meaning of statute of limitations." *Id*.

*Silverman I* explained that under the California Probate Code, if a creditor's claim is rejected, the claimant "must bring suit in the proper court against the executor or administrator, within three months after the date of service of the notice if the claim is then due, or, if not, within two months after it becomes due; otherwise the claim shall be forever barred." 621 F. 2d, 961, 964 citing Section 714, Cal. Probate Code (1956). The court described the statute as a "nonclaim

statute" which limited, but did not otherwise extend, the generally applicable statute of limitations. *Id.* The Massachusetts and California laws considered in *Saxe* and *Silverman I* are like the Florida probate laws that controlled Decedent's Probate Case and unlike the Michigan law that controlled in *Chicorel*.

### A. In Florida, a proof of claim in probate court does not toll the statute of limitations.

Florida law provides that statutes of limitation are tolled only in enumerated situations. Fla. Stat. § 95.051(1). Filing a proof of claim in probate court is not one of them. Id. Florida Statute § 733.702 sets forth the time within which a creditor must file a claim in a probate case. But this statute acts only as a jurisdictional bar to creditors in probate court. It does not prevent creditors from pursuing non-probate assets or otherwise toll the creditor's collection statute of limitation. The failure to file a claim against an estate within the timeframe set forth within Fla. Stat. § 733.702(1) does not bar the creditor from filing claims to enforce a liability outside of the estate. *Kent Ins. Co. v. Estate of Atwood*, 481 So.2d 1294, 1295 (Fla. 1st DCA 1986). Fla. Stat. § 733.702 requires creditors to file claims "on or before the later of the date that is 3 months after the time of the first publication of the notice to creditors or, as to any creditor required to be served with a copy of the notice to creditors, 30 days after the date of service on the creditor." The statute provides, "Nothing in this section shall extend the limitations period set forth in § 733.710." Fla. Stat. § 733.702(5). Section 733.710 sets forth "limitations on claims against estates." A timely filed claim under Fla. Stat. § 733.702 only preserves a creditor's right to payment through the probate estate. However, if there is an objection to the claim, the creditor, within 30 days, must file an independent action. Fla. Stat. § 733.705(5). Here, the IRS did not timely file a Proof of Claim and the Estate did not object to the late-filed claim. However, the statute does not require

there be an objection before a creditor files a lawsuit. And creditors (like the IRS, here) can file a suit at any time to enforce their liens. Fla. Stat. §§ 733.702(4) and 733.706.

Florida Probate Rules 5.490 through 5.499 reinforce the fact that Florida probate laws do not toll a creditor's statute of limitations. These Probate Rules establish the procedural framework for creditor claim filing but contain no tolling provisions.  They only set forth the form and manner of presenting and objecting to proofs of claim. Rule 5.490 requires that creditor statements of claim be verified and filed with specific information, while Rule 5.496 establishes objection procedures. These rules create an administrative framework for claim presentation but do not affect the statute of limitations.

### B.  In Florida, a proceeding is commenced only when a complaint or petition is filed.

The Michigan law analyzed in *Chicorel* provided that filing a proof of claim in a probate proceeding was equivalent to commencing a proceeding on the claim. Florida has no such law. Under Fla. Stat. § 95.031(1), the general rule is that an action is commenced when a complaint or petition is filed with the court. Fla. R. Civ. P. 1.050 states, "Every action of a civil nature shall be deemed commenced when the complaint or petition is filed." The Florida statute and rules demonstrate that Florida treats probate claim filing as a procedural requirement separate from litigation commencement. Fla. Prob. Rule 5.496 requires that objections to claims contain "a statement that the claimant is limited to a period of 30 days from the date of service of an objection within which to bring an action as provided by law." This language confirms that claim filing is distinct from bringing an action and that separate litigation may be necessary to enforce claims.

### C.  In Florida, the probate law governing proofs of claim is a nonclaim statute.

Florida Statute § 733.702 sets forth the time limits for presenting claims against a decedent's estate. Claims not timely filed are barred.  Section 733.710 is a "nonclaim statute" that

does not extend the generally applicable statute of limitations.  The Florida Supreme Court describes Fla. Stat. § 733.702 as a statute that "fixes the basic time frame for filing of claims in decedent's estates being probated in Florida." *Tsuji v. Fleet*, 36 So.3d 1020 (Fla. 2023) citing *May v. Illinois Nat. Ins. Co.*, 771 So.2d 1143, 1155 (Fla. 2000). Thus, Fla. Stat. § 733.702 is a "statute of limitations that cannot be waived in a probate proceeding by failure to object to a claim on timeliness grounds" and Fla. Stat. § 733.710 is a "jurisdictional statute of nonclaim that is not subject to waiver or extension in a probate proceeding." *May* at 1145.

The fact that Fla. Stat. § 733.710 is a nonclaim statute supports why the CSED was not tolled under I.R.C. § 6502(a). Here, the IRS filed its Proof of Claim late.[7] Surely, the United States will point out its late-filed claim is not barred by State nonclaim statutes. This is not disputed. See *United States v. Embrey*, 145 Fla. 277 (1940) and *United States v. Summerlin*, 310 U.S. 414, 416 (1940) ("It is well settled that the United States is not bound by state statutes of limitation or subject to the defense of laches in enforcing its rights."). However, while the government can argue its late-filed claim is not barred by a nonclaim statute, it cannot argue at the same time that, pursuant to the nonclaim statute, its statute of limitations is tolled.  The Ninth Circuit explained that a "so-called 'nonclaim' statute limited the otherwise generally applicable statute of limitation but does not extend it." *Silverman I* at 964. Similarly, while the Florida nonclaim statute cannot limit the government's late-filed claim in the Probate Case, it also does not extend the statute of limitations.

---

[7] On June 1, 2020 the Personal Representative served the Notice to Creditor on the IRS. Stmt ¶ 5. Pursuant to Fla. Stat. § 733.702(1), the proof of claim was due 30 days after. The IRS filed its Proof of Claim on November 3, 2020. Stmt ¶ 6.

### D. In Florida, allowance of a proof of claim in probate court does not amount to a judgment on the claim.

In *United States v. Ettelson*, 159 F.2d 193, 196 (7th Cir. 1947), the court held a proof of claim tolled the CSED. However, there, filing a claim in a Wisconsin probate court was "a demand of payment made at the only place that it could be made," and allowance of the claim amounted to a judgment. In *United States v. Paisley*, 26 F.Supp. 237, 238 (N.D. Ill. 1983), the court held the government's proof of claim in probate court tolled the CSED because when it was allowed it was tantamount to a judgment. In Florida, the probate court does not adjudicate proofs of claim merely because they are filed. Rather, if the personal representative objects to a proof of claim, the claimant has 30 days from the date of service of an objection to bring an independent action upon the claim, or a declaratory action. Fla. Stat. § 733.705(5). The failure to object to the claim, however, does not create a judgment in favor of the creditor. An example of this is in *United States v. Guyton*, No. 307-CV-273-J16-MCR, 2009 WL 1308431, at *1 (M.D. Fla. May 8, 2009), *aff'd*, 372 F. App'x 5 (11th Cir. 2010). There, the United States filed a proof of claim in a probate proceeding. When the executor of the decedent's estate objected to the government's proof of claim, the United States, in accordance with Fla. Stat. § 733.705(5) filed a suit to reduce the tax liabilities to judgment.

Florida Probate Courts, unlike those in Wisconsin (see *Ettelson*) and Illinois (see *Paisley*), cannot enter judgments in favor of creditors. Any such proceeding must take place outside of the probate court and can be filed while the probate case is pending. For this reason, the filing of a proof of claim does not toll the CSED under I.R.C. § 6502. Only an independently filed case (e.g. a suit to reduce a tax lien to judgment) would toll the CSED. Florida is similar to California in that respect. In California, "In the event the personal representative rejects a creditor's claim, the claim is barred unless the creditor files suit against the decedent's estate within three months after

27

rejection." *Dobler v. Arkluk Medical Center Industrial Group, Inc.*, 89 Cal. App. 4th, 530, 536 (Cal. App. 2d Dist. 2004). Likewise, in California, filing a proof of claim in a probate case does not constitute a "proceeding in court." *Silverman I* at 964.

### E. Florida law permits the IRS to enforce its liens against a decedent's property, even while a probate case is pending.

The Probate Case did not prevent the IRS from initiating a separate proceeding to enforce its liens against Decedent's probate or non-probate property. The IRS had liens against all of Decedent's property. Stmt ¶ 30. Florida Probate Code § 733.706 provides "Except upon approval by the court, no execution or other process shall issue on or be levied against property of the estate." However, it provides an exception for proceedings to enforce liens encumbering specific property. Fla. Stat. § 733.706. Florida Probate Code § 733.702(4)(a) states, "Nothing in this section affects or prevents: (a) A proceeding to enforce any mortgage, security interest, or other lien on property of the decedent."

Before the Probate Case was opened, the IRS had a lien on all of Decedent's real and personal property.[8] Stmt ¶ 30. The IRS even had a lien on Decedent's interest in Clarion Spirits, which owned Bardstown. Stmt ¶ 30. Thus, nothing in the Florida Probate Code prevented the IRS from initiating a proceeding to enforce its lien on Decedent's property. The Florida Probate Code expressly permits such a proceeding.

### III. Pursuant to a Stipulated Decision entered in Tax Court, Plaintiff is entitled to a refund for 1999 taxes paid, which refund due, as of April 3, 2026 was $24,050,547.71.

The United States does not dispute Plaintiff is entitled to a refund with respect to 1999.

---

[8] "Where, as here, a person fails to pay a tax after a demand, the internal revenue code automatically imposes a lien upon all property and rights to property, whether real or personal, belonging to such person." *United States v. Wade*, 790 F. App'x 906, 910 (10th Cir. 2019) citing I.R.C. § 6321.

Stmt ¶ 84. Nonetheless, Plaintiff was forced to bring suit for Decedent's 1999 refund because he has waited since March 17, 2023 (the date a Stipulated Decision was entered in Tax Court) for the IRS to issue it. Stmt ¶ 81. IRS records reflect, as of December 9, 2024, a refund due in the amount of $19,529,627.10. Stmt ¶ 85. IRS records reflect employees' efforts to get the 1999 refund released but not being able to get the computer system to do so. Stmt ¶ 86.

In the Stipulated Decision, the parties agreed, among other things (a) there was a deficiency of $21,416,897; (b) a penalty under I.R.C. § 6662 of $3,212,534.10; (c) interest would be assessed as provided by law; and (d) there was an overpayment of $62,735,930.46. Stmt ¶ 82.

The amount showing due on IRS records, as of December 9, 2024, reflect an amount smaller than actually due to Plaintiff. Pursuant to Plaintiff's CPA's computations, as of April 3, 2026, a refund in the amount of $24,050,547.71 was due for 1999. This amount was determined as follows:

Calculating balance due from Decedent as of 3/1/2022

> 4/15/2000: $24,629,428.10 assessment pursuant to Tax Court Decision (Ex. U).
> + $41,579,887.37 (Interest computed from 4/15/2000 to 1/20/2020)[9]
> -$25,447.00 (payment on 4/15/2010)
> $66,183,868.47

The balance due from Decedent as of 3/1/2022 was $66,183,868.47. Stmt ¶ 85. See Cox Decl ¶¶ 11-17; Ex. FF.

Calculating refund due to Plaintiff upon 3/1/2022 payment

> $84,320,090.46 (payment on 3/1/2020)
> -$66,183,868.47
> $18,136,331.99

---

[9] Pursuant to interest tolling, discussed *infra*, interest did not accrue on tax underpayments between 1/20/2020 through 7/10/2023.

The refund due to Plaintiff upon making the 3/1/2022 payment was $18,136,331.99. Stmt ¶¶ 86.

See Cox Decl ¶¶ 11-17; Ex. FF.

Calculating refund due to Plaintiff as of April 3, 2026

> $18,136,331.99
> +$5,914,325.72 (overpayment interest from 3/1/2022 to 4/3/2026)
> $24,050,547.71

The refund due to Plaintiff, as of April 3, 2026 was $24,050,547.71. Stmt ¶¶ 87-88. See Cox Decl.

18-20; Ex. GG.

There are no facts in dispute with respect to Plaintiff's entitlement to a judgment for 1999.

This judgment should be in the amount of $24,050,547.71, plus interest accruing since April 3,

2026.

**IV.** **Interest on the underpayments for 1997, 1998, and 1999 did not accrue between January 20, 2020 and March 1, 2022, pursuant to the presidentially-declared COVID-19 emergency and the courts' analyses in *Kwong v. United States* and *Abdo v. Comm'r*.**

To the extent this Court grants Plaintiff's Motion for Summary Judgment and determines

there are refunds due to Plaintiff, Plaintiff requests the order clarify that, in computing the "interest

allowed by law," interest did not accrue on underpayments of Decedent's taxes for the 1997, 1998,

and 1999 tax years between January 20, 2020 and March 1, 2022. Pursuant to the presidentially-

declared COVID-19 emergency declared beginning on January 20, 2020, all tax-related

obligations, including "payment of any tax," were postponed from January 20, 2020 and until 60

days after the COVID-19 emergency's latest incident date, or July 10, 2022. See I.R.C. § 7508A,

*Abdo v. Comm'r*, 162 T.C. 148 (Tax Ct. 2024)(*en banc*), and *Kwong v. United States*, 179 Fed Cl.

382, 387 (2025).

The Stafford Act (at I.R.C § 7508A)(2019) provides mandatory tax relief for taxpayers

whose principal residence or place of business is in a federally-declared disaster area. Section

30

7508A(a)(2019) provides in relevant part,

> In the case of a taxpayer determined by the Secretary to be affected by a federally declared disaster . . . the Secretary may specify a period of up to 1 year that may be disregarded in determining, under the internal revenue laws, in respect of any liability of such taxpayer –
>
> > (1) whether any of the acts described in paragraph (1) of section 7508(a) were performed within the time prescribed therefore . . .,
> >
> > (2) the amount of any interest, penalty, additional amount, or addition to the tax for periods after such date, and
> >
> > (3) the amount of any credit or refund.

For a "qualified taxpayer," Section 7508A(d)(1) provides a mandatory 60-day extension of tax-related deadlines, which begins on the earliest incident date and ends 60 days after the latest incident date. The Tax Court determined Section 7508A(d)(1) "provides for an automatic and mandatory postponement period that incorporates all of the acts referenced by Section 7508A(a)." *Abdo* at 169. Section 7508A(a) references the acts described in Section 7508(a)(1). Section 7508(a)(1)(B) references the "Payment of any income . . . tax." The Federal Court of Claims wrote the "plain meaning" of Section 7608A(d) "is that the automatic extension runs from the beginning of the disaster declaration, through the end of the declared disaster period, and until 60 days after the end of the declared disaster." *Kwong* at 387.

On March 13, 2020 President Trump declared a nationwide emergency under section 501(b) of the Stafford Act (42 U.S.C. §§ 5121-5207), due to the COVID-19 pandemic.[10] *Abdo* at 150. President Trump also approved disaster declarations for each of the 50 states, pursuant to Section 401 of the Stafford Act. On March 25, 2020, Pete Gaynor, the Administrator for the

---

[10] *See* Letter to Federal Agencies on an Emergency Determination for the [COVID-19] Pandemic Under the [Stafford Act], 2020 Daily Comp. Pres. Doc. 159 (Mar. 13, 2020).

Federal Emergency Management Agency issued DR-4486 FL Initial Notice in which he declared the State of Florida as a major disaster area, beginning January 20, 2020, and continuing.[11] Similar declarations were made for all 50 states. The emergency declaration was later amended to end on May 11, 2023. See *Kwong* at 387 citing Major Disaster Declarations and Related Determinations: Expiration of COVID-19-Related Measures, 88 Fed. Reg. 8884 (Feb. 10, 2023). Thus, the *Kwong* Court determined, "Under the express text of the statute, the automatic extension lasted until after the end of the disaster declaration, or in the case of the covid-19 disaster, until July 10, 2023 (60 days after its end date of May 11, 2023)." *Kwong* at 388.

Pursuant to Sections 7508A and 7508(a)(1)(B), interest on Decedent's underpayments for the 1997, 1998, and 1999 tax years was tolled as of January 20, 2020 and until the balances were paid on March 1, 2022 (before the end of the disaster period). Because it is not yet clear whether the Internal Revenue Service will automatically abate interest that accrued during the disaster period beginning January 20, 2020, consistent with the courts' reasoning in *Kwong* and *Abdo*, Plaintiff respectfully requests this Court order it to do so.

## CONCLUSION

Collection statutes of limitation for Decedent's 1997 and 1998 tax years were not tolled under I.R.C. § 6503(b) when Decedent's Probate Case was opened, nor under I.R.C. § 6502(a) when the IRS filed its Proof of Claim. For 9 months after the Probate Case was open, the IRS did not even recognize the case was pending. Moreover, both before and after it filed a Proof of Claim, it continued aggressive collection actions against both probate and non-probate property. Regardless, the collection statutes would not have been tolled because more than 97% of Decedent's property was not subject to the control of the Probate Court and filing a Proof of Claim

---

[11] https://www.fema.gov/disaster-federal-register-notice/dr-4486-fl-initial-notice

in a Florida Probate Court is not a "proceeding to collect tax." Accordingly, Plaintiff is entitled to a refund with respect to the 1997 and 1998 tax years in the amounts of $27,630,097.70 and $1,010,302.09, plus underpayment interest that (erroneously) accrued from January 20, 2020, which was paid, and overpayment interest from the date of payment (March 1, 2022).

Plaintiff is also entitled to a judgment for 1999 in the amount of $24,050,547.71 as of April 3, 2026, with overpayment interest accruing thereafter.[12]

Dated: April 10, 2026

Respectfully submitted,

Karen J. Lapekas
Florida Bar No. 57527
Karen@LapekasLaw.com

LAPEKAS LAW, P.A.
4000 Ponce De Leon Suite 470
Coral Gables, FL 33146
Phone: (305) 600-1485
Fax: (305) 600-1334

## CERTIFICATE OF SERVICE

I certify that on April 10, 2026 a true and correct copy of the foregoing was served via CM/ECF service on all counsel or parties of record on the Service List.

Karen J. Lapekas

---

[12] Pursuant to this Court's granting Plaintiff's Unopposed Motion for Relief From Local Rule 7.1(c)(2) (ECF 27, 28), Plaintiff submits this Motion which, without taking into account the table of contents and tables of citations, does not exceed thirty pages.