**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case No. 1:25-CV-20646-JB**

JORIAN LOFTIN, AS PERSONAL )
REPRESENTATIVE OF THE ESTATE )
OF PETER T. LOFTIN, )
             )
       Plaintiff, )
             )
       v. )
             )
UNITED STATES OF AMERICA, )
             )
       Defendant. )
_____)

**UNITED STATES' MOTION FOR PARTIAL SUMMARY JUDGMENT**

This is a tax refund suit. Plaintiff, as Personal Representative of the Estate of Peter Loftin, seeks refunds of $27,630,097.79 and $1,010,302.09 for 1997 and 1998, respectively. Unlike most refund suits, this suit does not turn on whether the taxpayer is entitled to some deduction or credit that the IRS disallowed. Indeed, Plaintiff does not dispute the tax assessments against Peter Loftin for 1997 and 1998. This case hinges on whether the statute of limitations on collection expired before the IRS received the payment.

The undisputed material facts demonstrate, as a matter of law, that the statute of limitations on collection had not expired. The IRS assessed the taxes at issue on November 22, 2010 and December 21, 2010 for 1997 and 1998, respectively. The IRS had ten years from those dates to collect the assessments, absent any events that tolled the statute of limitations on collection. Here, by filing a proof of claim in the probate case on October 27, 2020, the IRS commenced a timely proceeding in court to collect the tax within the ten-year

1

statute of limitations. Thus, under 26 U.S.C. § 6502(a), the statute of limitations was extended until the assessments were satisfied. But even if the filing of a proof of claim is not a proceeding in court, the probate proceeding suspended the statute of limitations on collection under 26 U.S.C. § 6503(b) because the probate court had custody or control of substantially all Mr. Loftin's assets. The inventory for the estate included all of Mr. Loftin's assets, including his interests in trusts and LLCs. And when the Estate sold its largest asset—an interest in Bardstown Distillery—it sought the approval of the probate court, including approval to use the sales proceeds to pay the taxes at issue.

The United States is entitled to summary judgment.

## Background

Mr. Loftin was an entrepreneur who wore many hats during his life. He founded (and later sold for a large profit) a regional telecommunications business. Statement of Undisputed Material Facts (SUMF) ¶ 1. He then purchased The Villa Casa Casuarina (the mansion formerly owned by Versace) in 2000, which he operated as a private residence, hotel, membership club, and a private events venue for eight years. *Id.* Mr. Loftin then moved on to the whiskey business. *Id.* ¶ 2. In 2016 he founded the Bardstown Bourbon Company (hereinafter "Bardstown Distillery"), which was a contract distillery. *Id.*

But Mr. Loftin did not directly own an interest in Bardstown Distillery. He held his interest through a series of entities he set up that had the effect of concealing his ownership interest in various business ventures and assets. SUMF ¶ 3. The following illustration shows the complex ownership structure of Mr. Loftin's interest in Bardstown Distillery :



SUMF ¶ 4. During the probate of the Estate, Mr. Loftin's interest in Bardstown Distillery, as identified above, was sold, which resulted in a payment to the IRS of $125 million on March 1, 2022. *Id.* The Estate contends that this payment was untimely as to the 1997 and 1998 tax years. *Id.*

### *Mr. Loftin's Tax Liabilities*

The IRS examined Mr. Loftin's 1997 and 1998 returns and determined that he underreported the tax shown on those returns. SUMF ¶ 5. The IRS sent Mr. Loftin a statutory notice of deficiency adjusting several line items for these tax years, but mostly increasing the capital gains reported. SUMF ¶ 6. In response, Mr. Loftin filed a petition with the Tax Court disputing those adjustments. SUMF ¶ 7.

Mr. Loftin had sizable capital gains in 1997 and 1998 from the sale of his telecom company. SUMF ¶ 8. To minimize the gains from that sale, Mr. Loftin participated in two tax-shelters: Foreign Leveraged Investment Programs ("FLIPs") and Bond Linked Issue Premium Structures ("BLIPs"). *Id.* The IRS later classified these shelters as abusive

transactions. *Id.* These transactions were the basis for Mr. Loftin's underreporting of his federal income tax liabilities. *Id.*

The Tax Court entered a stipulated decision, based on an agreement of the parties, determining that Mr. Loftin was liable for deficiencies for 1997 and 1998 in the amounts of $5,509,573 and $282,564.00, respectively, plus penalties pursuant to 26 U.S.C. § 6662(a). SUMF ¶ 9.

Despite agreeing to deficiencies and having funds to pay taxes, Mr. Loftin did not voluntarily pay the assessments in full. On the contrary, he concealed and acquired his assets through a web of nominees. SUMF ¶ 10. And so, the IRS was able to collect only $53,000 before Mr. Loftin died. *Id.*

Because Mr. Loftin failed to pay his federal income tax liabilities in full before his passing, his Estate became liable for these debts. SUMF ¶ 11. And to pay Mr. Loftin's tax debts, the Estate intended sell Mr. Loftin's interest in Bardstown Distillery and pay a portion of the proceeds to the United States. And that is what happened, when on March 1, 2022, the IRS received a payment from the sale of Mr. Loftin's interest in Bardstown Distillery to satisfy the unpaid federal tax debts, including the years at issue.

### *Mr. Loftin's Estate*

Mr. Loftin passed away on November 16, 2019. SUMF ¶ 12. Ten days later, Thomas Wilson opened a probate case in Miami-Dade County, Florida. *Id*. The Probate Court appointed Mr. Wilson as the personal representative of the Estate. *Id.*

In August 2020, the Estate filed its initial inventory listing personal and real property, investment accounts, and interests that Mr. Loftin held in various entities. *Id*. The Estate filed an amended inventory filed in July 2021, again listing personal and real

property, investment accounts, and interest that Mr. Loftin held in various entities. *Id.* This amended inventory included updated fair market values based on appraisals. *Id.*

On September 11, 2020, Mr. Wilson sent the Notice to Creditors to the IRS via the United States Postal Service. SUMF ¶ 13. The IRS filed its proof of claim on October 27, 2020 and an amended proof of claim in March 2021, both of which included the unpaid federal income tax liabilities for 1997 and 1998. SUMF ¶ 14.

The Estate had always intended to pay the IRS's proof of claim from the sale of any interest Mr. Loftin had in Bardstown Distillery that survived his death:

> From the outset of his appointment, Mr. Wilson knew that any survival of Mr. Loftin's interest in Bardstown (through his interest in the related entities) required Mr. Wilson's cooperation and transparency with the IRS, with the goal of either an offer-in-compromise or installment/ballon payment, or a combination of both.

SUMF ¶ 15.

In January 2022, the Probate Court appointed Jorian Loftin (Mr. Loftin's son) as co-personal representative of the Estate with Mr. Wilson. SUMF ¶ 16. Shortly thereafter, the Estate, through its co-personal representatives Mr. Wilson and Jorian Loftin, sought the Probate Court's approval of the sale of Mr. Loftin's interest in Bardstown Distillery. SUMF ¶ 17. On February 25, 2022, the Probate Court Entered the Agreed Order Approving Sale. *Id.*

Then, on March 1, 2022, the IRS received $125,270,000 from the sale of Mr. Loftin's interest in Bardstown Distillery of which the IRS applied $27,630,097.79 and $1,010,302.09 to satisfy the unpaid federal income tax liabilities for 1997 and 1998, respectively. ECF 1 at ¶ 13; SUMF ¶ 18. And so, the Estate satisfied the IRS's proof of claim from the sale of Mr. Loftin's interest in the Bardstown Distillery as it intended all along.

On February 28, 2024, Plaintiff filed a Form 843 – *Claim for Refund and Request for Abatement* for 1997 and 1998 seeking refunds of $27,630,097.79 and $1,010,302.09, respectively.[1] SUMF ¶ 49. For both years, the reason for the claim is the same: "as the CSED expired prior to the date of payment." SUMF ¶ 20. Further, as part of this form, the Estate noted that the amounts assessed were pursuant to the Tax Court decision, and as such did not dispute the amount of the assessment. *Id.*

The IRS failed to act on the refund claim, and so after waiting more than six months, the Estate filed this suit. *Id.* ¶ 21. The sole issue in the complaint related to tax years 1997 and 1998 is whether the collection statute expired before March 1, 2022. *Id.* ¶ 22.

## Standard of Review

In this refund suit, the Estate bears the burden to prove that it is entitled to the refund that it seeks. *Rubenstein v. United States*, 826 F. Supp. 448, 453 (S.D. Fla. 1993), *aff'd,* 103 F.3d 147 (11th Cir. 1996). Here, the Estate must show that the collection statute expiration date ("CSED") expired before the payment was sent.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As courts have explained, "[a] fact is 'material' only if it has the potential to affect the outcome of the case, and a dispute is 'genuine' only if a reasonable jury could return a verdict for the non-moving party." *Victor Elias Photography, LLC v. Ice Portal, Inc.*, 43 F.4th 1313, 1319 (11th Cir. 2022). The nonmoving party cannot rest on mere

---

[1] The Estate also seeks a refund for 1999. The IRS and the Estate stipulated that the there was an overpayment of $12,694,351.82 plus interest for 1999. ECF 1 at ¶ 15. The United States agrees that this amount is due and owing. As of the filing of this motion, the IRS is manually processing this refund.

allegations to overcome a properly supported motion for summary judgment. *Moses v. American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996). Rather, the nonmoving party must produce "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987).

Here, the Estate cannot produce "sufficient evidence" that they are entitled to a refund. They cannot show that the collection statute expired when the IRS received the payment from the sale of Mr. Loftin's interest in the Bardstown Distillery. Thus, the United States is entitled to judgment as a matter of law.

### Argument

The typical premise of a refund suit is that a taxpayer disputes that they owe the tax. That is not the case here. There is no dispute that Mr. Loftin owed the taxes for 1997 and 1998.[2] These tax liabilities were litigated, stipulated to by the parties, determined by the Tax Court, and assessed against Mr. Loftin in 2010. SUMF ¶ 9. But now the Estate contends that the collection statute expired when the IRS received the money that it applied to satisfy the decedent's unpaid federal income tax liabilities. The undisputed material facts say otherwise. The IRS commenced a timely proceeding in court to collect the tax by filing a proof of claim in the probate case. Alternatively, the probate proceeding suspended the statute of limitations on collection because the probate court had control over substantially all of Mr. Loftin's assets. Under either theory, the IRS received payment within the statute of limitations on collection. And so, the Estate is not entitled to a refund.

---

[2] Any such attempts to dispute the underlying amounts would be barred by res judicata. *Batchelor-Robjohns v. United States*, 788 F.3d 1280, 1285 (11th Cir. 2015); *see also Shapiro v. United States*, 951 F. Supp. 1019, 1023 (S.D. Fla. 1996) (internal citations omitted) ("The doctrine of *res judicata* is applicable in income tax cases.")

I.     **The filing of the proof of claim is a proceeding to collect tax that extended the CSED until Mr. Loftin's liability was satisfied or became unenforceable.**

Under 26 U.S.C. § 6502(a), the IRS generally has ten years from the date of assessment to collect a tax "by levy or by a proceeding in court." A timely proceeding in court to collect a tax liability extends the statute of limitations on collection until "the liability for the tax (or a judgment against the taxpayer arising from such liability) is satisfied or becomes unenforceable." *Id.* Here, the IRS timely commenced a proceeding in court to collect Mr. Loftin's tax liabilities within ten years of the assessment date. Thus, the collection statute was extended until Mr. Loftin's tax liabilities were satisfied.

The IRS assessed against Mr. Loftin federal income tax, penalties, and interest on November 22, 2010 and December 21, 2010 for 1997 and 1998, respectively. Under § 6502(a), the IRS had ten years from those assessments, or until November 22, 2020 and December 21, 2020, to collect those assessments "by levy or by a proceeding in court." On October 27, 2020—within ten years of the assessment dates—the IRS filed a proof of claim in the probate case for Mr. Loftin's estate. SUMF ¶ 14. The filing of this claim was a timely proceeding in court to collect Mr. Loftin's unpaid tax liabilities.

"Whether a proof of claim is a 'proceeding in court' is a question of federal law that necessarily turns on the nature, function, and effect of the proof of claim under state law." *United States v. Est. of Chicorel*, 907 F.3d 896, 898 (6th Cir. 2018). Thus, courts look at how the state treats the filing of the proof claim in probate to determine whether the proof of claim is a "proceeding in court." *Id.* In undertaking this inquiry, courts consider "factors such as whether the proof of claim serves merely to provide notice to the estate, if it works to toll state statutes of limitations, and if it will necessarily lead to a final disposition of the claim." *Id.*

Under Florida law, a proof of claim in probate has significant legal consequences that compel the Court to determine that the IRS's filing of a proof of claim in probate is "a proceeding in court" under § 6502(a). A timely filed proof of claim tolls the statute of limitations for claim against the decedent that arose before and survive death. *See* Fla. Stat. § 733.104(2) ("If a person against whom a cause of action exists dies before the expiration of the time limited for commencement of the action and the cause of action survives, if a claim is timely filed, the expiration of time limited for commencement of the action shall not apply."). And a timely filed claim requires the estate to either pay the claim or file an objection. *See* Fla. Stat. §§ 733.705(1)-(3). Thus, filing a proof of claim leads to the final disposition of the creditor's claim. *See, e.g.*, *Est. of Chicorel*, 907 F.3d at 898 (explaining the effect of a proof of claim in probate under Michigan law).

Here, the IRS had a claim for Mr. Loftin's unpaid taxes that existed before his death. That cause of action *i.e.*, the collection of taxes, survives death. Indeed, a "decedent's income tax obligations incurred during his life are such a debt to be paid by the Estate." *Vallega v. Clark*, No. 2001-12927-PRDL-10, 2009 WL 1835265 (Fla. Cir. Ct. Mar. 31, 2009) (*citing United States v. Stevenson,* 159 F. Supp. 2d 1371 (M.D. Fla. 2001)). The IRS timely presented its claim for Mr. Loftin's taxes in probate court within ten years of the date of assessment. *See* 26 U.S.C. § 6502(a). This, in turn, placed an obligation on the Estate to pay or object to the claim. And so, by filing its proof of claim, the IRS put its "claim on the path towards final disposition." *Est. of Chicorel*, 907 F.3d at 899.

Plaintiff erroneously maintains that the IRS's claim was untimely because it was filed more than 30 days after the Estate provided notice to the IRS. ECF 1 at ¶ 30. Claims of the United States are not restricted by state statutes of limitations. *United States v. Summerlin*, 310

U.S. 414 (1940); *see also Saccullo v. United States*, 913 F.3d 1010, 1015 (11th Cir. 2019) (applying the *Summerlin* rule to Florida statutes). Thus, the United States' claims against an estate for the decedent's unpaid taxes are not barred when the IRS fails to timely file a claim in probate court. *See Stevenson*, 159 F. Supp. 2d at 1372 (relying on *Summerlin* to reject an argument that the government's claim for unpaid taxes was barred under state law because the IRS failed to timely file a proof of claim in probate court); *see also Bacigalupo v. United States*, 399 F. Supp. 2d 835, 838-41 (M.D. Tenn. 2005) (applying *Summerlin* to Tennessee's probate code); *Est. of Chicorel*, 907 F.3d at n.2 (6th Cir. 2018) (noting that an untimely proof of claim filed by the government "would likely still be a proceeding in court as state statutes of limitation do not run against the government.").

To recap, the IRS filed a proof of claim in probate court for Mr. Loftin's unpaid taxes within ten years of assessment. The filing of the proof of claim commenced "a timely proceeding in court for the collection" of Mr. Loftin's unpaid federal income tax liabilities. Thus, the limitations period to collect these taxes was extended "until the liability for the tax . . . [was] satisfied." 26 U.S.C. § 6502; *Est. of Chicorel*, 907 F.3d at 898. And so, the collection statute had not expired when Mr. Loftin's liability was satisfied through the probate proceedings. Summary judgment should be entered in favor of the United States.

## II.    In the alternative, the probate court had control of substantially all of the Estate's assets.

As noted above, the United States generally has ten years from the date of assessment to collect a tax. 26 U.S.C. § 6502(a). That ten-year period, however, can be extended. *See generally* 26 U.S.C. § 6503. Relevant here, the statute of limitations was suspended during the probate case because the Probate Court had control or custody of Mr.

Loftin's assets. 26 U.S.C. § 6503(b). As a result, the collection statute had not expired when the IRS received full payment of Mr. Loftin's liabilities.

A.      *The probate court had control of substantially all of Mr. Loftin's assets.*

It is undisputed that Mr. Loftin held an interest in Bardstown Distillery through various LLCs. SUMF ¶¶ 3, 4. What is at issue is whether the probate court had control of Mr. Loftin's interest in the distillery. And the undisputed material facts show that it did. The Probate Court approved the sale of Mr. Loftin's interest in the distillery, and this approval was sought by the Estate's co-personal representatives: Jorian Loftin and Thomas Wilson. SUMF ¶¶ 16, 17.

The controlling law is not disputed—the statute of limitations is suspended under 26 U.S.C. § 6503(b) when "all or substantially all of the assets of the taxpayer are in control or custody of the court…" Treas. Reg. §301.6503(b)-1. And here substantially all the assets were in control of the Probate Court. *See* ECF 1 at 19.

The November 26, 2019 Petition for Administration included all or substantially all assets known to be owned by Mr. Loftin. The Executor filed an inventory of all such assets, and the Probate Court assumed custody and control of those assets. SUMF ¶¶ 12. These assets included Mr. Loftin's interest in various trusts and entities. Ex. 10. This inventory was later amended, still including Mr. Loftin's interest in various trusts and entities. SUMF ¶ 12. All assets listed in the inventory were within the custody and control of the Probate Court. Exs. 10, 12. Mr. Loftin's interest in Bardstown Distillery was one of those assets.

The fact that the Probate Court had control over this interest is evidenced by the Probate Court's approval for the sale of Mr. Loftin's interest in Bardstown Distillery at the request of the co-personal representatives of the estate, the beneficiary, and the residuary

11

beneficiary. SUMF ¶ 17. In the motion to approve the sale, the movants noted that the sales proceeds payable to the "Estate, or any of its related entities" would "be held in escrow until such time that the decedent's tax liens are resolved with the Internal Revenue Service." Ex. 7. Ultimately, the IRS received approximately $125 million from the proceeds of the Bardstown Distillery sale, which it applied to satisfy Mr. Loftin's tax debts. SUMF ¶¶ 4, 18. Even without considering the other assets over which the Probate Court had control, the interest in Bardstown Distillery alone represents substantially all Mr. Loftin's assets. *See* SUMF ¶ 17. Thus, the Probate Court had custody or control over more than a "relatively small amount of Decedent's assets."

> B.       *The Estate fails to show how the probate court lacked control over substantially all of the Estate's assets.*

The Estate argues incorrectly that § 6503(b) does not apply to suspend the collection statute because the probate case did not prevent the IRS from taking collection action. Although the IRS could collect from assets that were not part of the probate estate, the probate case prevented the IRS from taking collection action against all probate assets beyond filing a proof of claim and preserving its interest in the decedent's property and rights to property through filing and re-filing Notices of Federal Tax Lien ("NFTL").

Contrary to the Estate's argument, the IRS did not issue any levies after it learned for the probate case. The IRS issued a Notice of Levy on January 29, 2020, which is after Mr. Loftin's death. But the Estate did not issue the IRS a Notice to Creditors to place it on

notice of the probate case until September 11, 2020.[3] The IRS then promptly filed its proof of claim.

Nor do the NFTL filings show that the IRS's collection activity was not hindered. For the tax years at issue, the filing of NFTLs were not new notices—they were re-filings. Ex. 16 at 1. As such, this is not a new action to "create, perfect or enforce" a new lien against the decedent's property but simply maintains the "status quo." *In re O'Callaghan*, 342 B.R. 364, 367 (Bankr. M.D. Fla. 2006) (*internal citations omitted*) (finding that the IRS's refiling of the NFTLs did not violate the bankruptcy stay).

Similarly, the NFTLs filed for 2000, 2012, and 2013 (tax years not at issue) are not evidence that the IRS continued to actively collect Mr. Loftin's tax liabilities. The NFTLs against Mr. Loftin in his own name for 2000, 2012, and 2013 were filed in December 2019, shortly after Mr. Loftin's death and months before the IRS had notice of the probate case. *Compare* ECF 1 at ¶ 23 *with* Ex. 22 at 3, 8, 16, Certified Transcripts (showing entries for NFTLs on December 20, 2019 *not* December 20, 2020). The IRS took no action to enforce these liens outside of probate or levy on the property encumbered by these liens. To the extent these liens were re-filed after the IRS learned of the probate case, the re-filing was not a collection action. *See O'Callaghan*, 342 B.R. at 367.

The NFTL against 3380 Street LLC as Trustee of the 3380 NE 170th Street Land Trust as nominee of Peter T. Loftin was filed after the IRS knew of the probate case. Ex. 23. But this is irrelevant because the nominee lien is not a new lien. The federal tax liens against Mr. Loftin for the 2000, 2012, and 2013 tax years arose upon assessment and attached to all

---

[3] After receipt of the Notice to Creditors, the IRS did investigate to determine if there were any non-probate assets from which it could collect Mr. Loftin's liabilities outside probate. But it found none.

property and rights to property of Mr. Loftin, including the property identified on the nominee lien. *See* 26 U.S.C. §§ 6321, 6322; *G.M. Leasing Corp. v. United States,* 429 U.S. 338, 350-351 (1997). The IRS filed NFTLs against Mr. Loftin to place others on notice of its liens on all of Mr. Loftin's property and rights to property, including property held by nominees, in December 2019, before the IRS learned of the probate. The filing of the nominee NFTL in 2021 simply placed others on notice that the liens against Mr. Loftin attached to the property described on the nominee lien to protect the IRS's claim to the property against purchasers and other persons.[4] *See* 26 U.S.C. § 6323(a).

In any event, the filing of a probate case does not prevent the IRS from filing NFTLs to protect its interest in the property and rights to property of the decedent. Indeed, a probate proceeding does not operate as a stay to prevent the filing of a lien like in bankruptcy. A bankruptcy stay is an immediate halt on all collection actions versus a probate proceeding which is a process to handle payments of debts and asset distributions. *See* 11 U.S.C. § 362(a)(4). This is because not all of a decedent's property may pass through a probate estate. The NFTLs ensure that the IRS's liens are perfected as to any property that is not part of the probate estate. And, unlike in bankruptcy, there is no discharge of unpaid taxes. The IRS can collect a decedent's unpaid tax liability after the probate is closed. It follows that the IRS should be able to protect its interests in the property and rights to property of the decedent in the event that the probate proceeding does not result in full payment of the decedent's taxes.

---

[4] The 3380 NE 170th Street Land Trust held the former home of Mr. Loftin, which the Estate had deemed the homestead, and therefor was not an asset under control of the probate court. Ex. 3, Order Determining Homestead Status of Real Property.

14

In sum, the probate case halted the IRS's efforts to collect, through levy or otherwise, the assets in the custody and control of the probate court, including Mr. Loftin's various interests in trusts and LLCs. The filing and re-filing of NFTLs served merely to protect the IRS's interests in Mr. Loftin's property in the event that collection action would be necessary after the probate case was closed.

***

It is undisputed that the Probate Court approved the sale Mr. Loftin's interest in Bardstown Distillery upon the request of the Estate's co-personal representatives, Mr. Wilson and Jorian Loftin. The Probate Court's approval of the sale shows that the Probate Court had control over Mr. Loftin's interest in Bardstown Distillery and thus substantially all of the Mr. Loftin's assets. Under 26 U.S.C. § 6503(b), the statute of limitations on collection was suspended during the pendency of the probate case. And so, the statute of limitations remained open when the IRS received payment of Mr. Loftin's tax liabilities from the proceeds of the sale of his interest in Bardstown Distillery.

<strong><u>Conclusion</u></strong>

This case presents a simple question: had the collection statute expired when the IRS received the payment from the sales proceeds of the Bardstown Distillery? The undisputed facts show that it was not. The IRS had commenced a timely proceeding in court to collect Mr. Loftin's unpaid taxes by filing a proof of claim in the probate case. This had the effect of extending the statute of limitations until the tax liabilities were paid or became unenforceable. Alternatively, the statute of limitations was suspended because the probate court had control over substantially all of Mr. Loftin's assets. It is undisputed that the Probate Court approved the sale of his interest in Bardstown Distillery and that the IRS

15

received approximately $125 million of those sales proceeds to satisfy Mr. Loftin's tax debts.

Thus, the Court should enter summary judgment in favor of the United States.

Dated: April 10, 2026                    Respectfully submitted,


                                          BRETT A. SHUMATE
                                          Assistant Attorney General

                                          JOSHUA WU
                                          Deputy Assistant Attorney General,
                                          Tax Litigation Branch

                                          **Amanda J. Cornwell**
                                          AMANDA J. CORNWELL
                                          Trial Attorney
                                          Special Bar No. A5502559

                                          **U.S. Department of Justice**
                                          **Civil Division, Tax Litigation Branch**
                                          P.O. Box 14198
                                          Washington, D.C. 20044
                                          (202) 518-8048 (v)
                                          (202) 514–6866 (f)
                                          Amanda.Cornwell@usdjoj.gov

                                          *Of Counsel*:

                                          JASON A. REDING QUIÑONES
                                          United States Attorney
                                          Southern District of Florida

                                          *Counsel for United States of America*


## CERTIFICATE OF SERVICE

I hereby certify that on April 10, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will give notice of the filing to all registered participants.

                                          **Amanda J. Cornwell**
                                          AMANDA J. CORNWELL
                                          Trial Attorney
                                          U.S. Department of Justice

16